UNION TRUST CO. *v.* ELECTRIC PARK AMUSEMENT CO.

1. CORPORATIONS — PLEDGE — MORTGAGES — POWER TO SECURE LOANS.

Under provisions in a corporate charter authorizing the company "to issue bonds and secure the same by mortgage, pledge, deed of trust or otherwise," the corporation had authority to issue bonds and pledge them to secure a debt evidenced by a corporate note.

2. SAME—PLEDGE—BONDS—CORPORATE POWERS.

Mortgage bonds of the par value of $38,000 were a proper subject of pledge by the managing directors of the corporation, to secure a debt of $30,400, notwithstanding a resolution of the stockholders limiting the price at which the bonds could be sold to ninety per cent. of the par value.

3. SAME—PLEDGE—NEGOTIABLE INSTRUMENTS — BOARD OF DIRECTORS—VALIDITY OF MEETINGS—ESTOPPEL.

A pledge of such bonds was valid under a resolution of the board of directors purporting to be adopted at a duly called meeting at which two of the directors attended, without any notice to the third director who held only a nominal amount of stock, lived in a different State, and never attended the corporate meetings, where the two directors conducted all the

corporate business, obtained funds by means of the loan, and where the corporation acquiesced in their act for two years without objection.

4. PLEDGE—ASSIGNMENTS—RIGHTS OF PLEDGEE—MORTGAGE.

And where the corporation assigned its interest in the pledged bonds to another creditor as security for its debt, and such creditor purchased the bonds of the pledge on default at public sale, it became the owner of both liens, entitled to collect interest on the bonds from the time the interest had been paid on the debt secured thereby, not being limited to interest from the date of purchase.

5. ATTORNEY AND CLIENT — FEES ON FORECLOSURE PROCEEDINGS —REASONABLENESS.

The trial court having excluded testimony as to the particulars of services rendered by complainants' solicitors on foreclosure proceedings, and having fixed the amount at $2,500 on the basis of general testimony as to value, the record is remanded, and such court is required to take further proofs as to the details thereof and the capacity in which the solicitors acted in various proceedings, for which they claim compensation.

Appeal from Wayne; Murfin, J. Submitted June 8, 1910. (Docket No. 27.) Decided July 14, 1910. Rehearing denied December 8, 1910.

Bill by the Union Trust Company, as trustee, against the Electric Park Amusement Company, the Electric City Amusement Company, and the Detroit Trust Company, trustee, for the foreclosure of a trust mortgage. The Detroit Lumber Company was made defendant by the cross-bill of the defendants. From a decree for complainants, defendants and said Detroit Lumber Company appeal. Modified and remanded for further proofs.

*Russel, Campbell, Bulkley & Ledyard* (*Harry C. Bulkley*, of counsel), for complainant.

*George W. Radford*, for defendant Electric Park Amusement Company.

*Emanuel T. Berger*, for cross-defendant, Detroit Lumber Company.

BLAIR, J.   The bill of complaint in this case was filed to foreclose a mortgage executed by the Electric Park Amusement Company, a corporation organized under the laws of the State of Delaware, but having its principal place of business at the city of Detroit, and delivered to complainant as trustee to secure a bond issue of $80,000, October 26, 1905.

The defendants to the original bill were the Electric Park Amusement Company, the Electric City Amusement Company and the Union Trust Company as trustee under the second mortgage (subsequently the Detroit Trust Company, trustee, was substituted in place of the latter).   There are two cross-bills, the first filed by the two defendant amusement companies, to which the Union Trust Company, trustee, complainant, the Union Trust Company, trustee, a bondholder, the Union Trust Company, a corporation, and the Detroit Lumber Company, are defendants; the second by the Detroit Trust Company, succeeding trustee under a second mortgage, against the last above named defendants, and the two amusement companies.

The first mortgage, given by the Electric Park Amusement Company to the Union Trust Company as trustee, sought to be foreclosed in this case, was authorized by resolution of the stockholders passed at a meeting thereof on October 25, 1905, reading as follows:

"Whereas, for the purpose of acquiring title to the land now occupied by Electric Park Amusement Company at the corner of Jefferson avenue and Belle Isle bridge approach, Detroit, Michigan, and to make additional improvements in the way of construction of a pier on the river front, it is necessary and desirable that the company borrow the sum of eighty thousand dollars ($80,000), therefore,

"Resolved, That for the purpose aforesaid, this company issue its first mortgage bonds in the amount of eighty thousand dollars ($80,000), divided into one hundred and fifty bonds of the denomination of $250, $500 and

$1,000 each, all to be dated October 26, 1905, and to be payable within twenty years, such bonds to bear interest at the rate of not to exceed five per cent. per annum, payable semi-annually, both principal and interest being payable in gold coin of the United States of America, of the present standard of weight and fineness, if so demanded by the holder; that such bonds be secured by a first mortgage or deed of trust of all the property, rights and franchises now owned by the company or hereafter to be acquired by it during the lifetime of said mortgage or deed of trust, and the income thereof; the bonds and mortgage in other respects than those above indicated, and the provisions for the payment of the same, to be referred to the board of directors of the corporation for determination.

"And further resolved, That said board of directors of this corporation are hereby authorized and directed to have said bonds and mortgage or trust deed properly executed by the officers of said corporation, and to negotiate the sale of said bonds and sell the same at a price not less than 90 per cent. of the par value thereof."

At the time of the adoption of this resolution by the stockholders, the directors of the corporation were Arthur H. Gaukler of Detroit, president, and who controlled a majority of the stock; Francis P. Dreher of Detroit, secretary, and Harry W. Davis of Wilmington, Delaware, who held ten of the $1 shares of stock.

On the same day that the foregoing resolution was adopted by the stockholders, Gaukler and Dreher held a directors' meeting, at which they adopted and certified a resolution, as follows:

"Whereas, it is desirable to provide sufficient time for the proper negotiation and sale of the eighty thousand dollars of bonds above authorized, and the company requires forty thousand dollars for present uses:

"Therefore, resolved, That the president and secretary be and they are hereby authorized to borrow the sum of forty thousand dollars from the Union Trust Company of Detroit, for the term of one year, with the privilege of renewal for an additional year, with interest at five per cent. per annum, payable semi-annually, and to execute the company's note for said loan and secure the same by

pledge as collateral security of the entire issue of eighty thousand dollars of bonds above authorized.

"ARTHUR H. GAUKLER,
"President.
"FRANCIS P. DREHER,
"Secretary.

"The undersigned, president and secretary, respectively, of the Electric Park Amusement Company, hereby certify that the foregoing is a true and correct copy of a resolution passed by the board of directors of said Electric Park Amusement Company at a meeting duly called and held on October 25, 1905, at which meeting the following directors, Arthur H. Gaukler and Francis P. Dreher, being a quorum of the said board, were present.

"ARTHUR H. GAUKLER,
"President.
"FRANCIS P. DREHER,
"Secretary."

On the basis of this resolution the Union Trust Company loaned $40,000 to the Electric Park Amusement Company, which it used for legitimate purposes. Forty-two thousand dollars of the bonds were sold and released from pledge and a sufficient amount of the proceeds applied upon the $40,000 loan to reduce it to $12,666.68.

April 28, 1906, the Union Trust Company loaned to the Electric Park Amusement Company $30,400 and took the following contract note:

"$30,400.00.          DETROIT, MICH, April 28, 1906.

"Four months after date, Electric Park Amusement Company promises to pay to the order of the Union Trust Company, of Detroit, at its office in the city of Detroit, Michigan, thirty thousand four hundred and 00-100 dollars, for value received, with interest at the rate of six (6) per cent. per annum, having deposited herewith, as collateral security for the payment hereof, and all other liabilities, absolute or contingent, present or future, of the undersigned to the said Union Trust Company, thirty-eight thousand dollars ($38,000.00) par value, of bonds of said Electric Park Amusement Company of the issue of October 26, 1905; which property, or any part thereof, with any other property hereafter deposited in substitution therefor or in addition thereto, the holder of this note, in

default of payment thereof, is authorized to sell, at the expense of the undersigned, at public or private sale, at its option, and at its option to purchase at such sale, and to apply the proceeds in payment of this note, and the balance upon such other of said liabilities as the holder may elect.

"It is further agreed that if default be made in the payment of any installment of interest when the same shall become due, or if in the opinion of the holder of this note, the said security shall depreciate in value, said holder may elect without notice that this obligation is due and payable on demand.

"It is further agreed that said Union Trust Company shall have the right to hold and apply, at any time, its own indebtedness or liability to the maker hereof, or any securities or property of the maker in its custody or possession, as security for the payment of any liability due, or to become due, from the maker hereof.

"ELECTRIC PARK AMUSEMENT CO.,
"By ARTHUR H. GAUKLER, President.
"By FRANCIS P. DREHER, Sec. & Treas."

The foregoing loan was based upon the following certified action of the directors:

"The undersigned, respectively, president and secretary of the above named corporation, do hereby certify that the following is a true and exact copy from the books of the corporation of a resolution which was regularly adopted at a special meeting of the board of directors of said corporation, duly called and held on the 25th day of April, A. D. 1906, a quorum being present at said meeting, to wit:

"On motion of Francis P. Dreher, secretary, seconded by Arthur H. Gaukler, president, it was resolved that the president and secretary be authorized and directed to execute and deliver to the Union Trust Company, of Detroit, Michigan, the note of the Electric Park Amusement Company of Delaware, for the sum of $30,400, payable four months after date, with interest at the rate of six per cent. per annum, and to execute and deliver to the said Union Trust Company, as security for the payment of said note, a collateral assignment of $38,000 of bonds now held in the hands of the said Union Trust Company as collateral to a note of $12,666.68, with the usual conditions for the sale of said bonds in case of any default in meeting the conditions of said note, and to deliver together with

said note and said collateral assignment the said bonds; that from the proceeds of said loan the president and secretary pay to the Union Trust Company all the indebtedness now existing from this company to the Union Trust Company; and that $15,000 of par value of stock of the Electric Park Amusement Company be delivered to F. M. Delano for services in securing loan.

"(Corporate Seal).

"ARTHUR H. GAUKLER,
"President.
" FRANCIS P. DREHER,
"Secretary."

On said April 28, 1906, The Electric Park Amusement Company and the Detroit Lumber Company entered into the following agreement:

" An agreement entered into between the Electric Park Amusement Company, a corporation organized under the laws of the State of Delaware, of Detroit, Michigan, party of the first part, and the Detroit Lumber Company, a corporation organized under the laws of the State of Michigan, of Detroit, Michigan, party of the second part, at Detroit, Michigan, on the 28th day of April, 1906, witnesseth:

"Whereas, that heretofore, to wit, on the 5th day of March, 1906, the parties hereto did enter into a contract— a copy of which contract is hereto attached, marked Exhibit A.; and

"Whereas, said party of the second part has this day released in full its lien and claim to the ten thousand dollars ($10,000) of bonds of said party of the first part created by said agreement; and

"Whereas, in consideration of such release, said party of the first part is willing to assign to said party of the second part as collateral security to the payment of its debt, as more specifically stated and provided for in said Exhibit A, to which reference is hereby made and which is made a part hereof, except as herein provided, to said party of the second part all of its interest in and to said thirty-eight thousand dollars ( $38,000.00 ) of its bonds, subject to the rights and lien of the Union Trust Company, of Detroit, Michigan, to said bonds, said bonds being now pledged to the Union Trust Company to secure the payment of the principal and interest of its loan to said party

of the first part, which loan is for the sum of thirty thousand four hundred dollars ($30,400 ):

"Now, therefore, in consideration of the premises, the said party of the first part does hereby assign unto said party of the second part its interest in said thirty-eight thousand dollars ($38,000) of its bonds as collateral security to the payment of the debt of said party of the first part to said party of the second part.

"It being expressly provided, however, by the parties hereto that this assignment is made subject to the lien of said Union Trust Company to any and all of said bonds. It being further understood that said party of the second part has no interest whatever in the same until after the payment in full of both principal and interest by said party of the first part to said Union Trust Company of its said loan of thirty thousand four hundred dollars ($30,400).

"In witness whereof, the said Electric Park Amusement Company has hereunto subscribed its name by its president and secretary-treasurer, and affixed its corporate seal the day and year first above written; and the said Detroit Lumber Company has hereunto subscribed its name by its president and secretary, and affixed its corporate seal the day and year first above written.

(Corporate Seal).

        "ELECTRIC PARK AMUSEMENT CO.,
    "By ARTHUR H. GAUKLER, President.
        "FRANCIS P. DREHER,
            "Secretary-Treasurer.
        "DETROIT LUMBER CO.,
        "By E. L. THOMPSON, President.
        "HENRY OTIS, Secretary."

(Corporate Seal).

The Electric Park Amusement Company having defaulted as to the $30,400 note, the Union Trust Company sold at public sale the $38,000 of bonds to the Detroit Lumber Company for $31,500, which canceled the indebtedness of the amusement company to the Union Trust Company, leaving a surplus of $163.18, which was paid over to the Detroit Lumber Company.

The Electric Park Amusement Company conveyed its property to the Electric City Amusement Company, which was a reorganization of the first named company.   Further

facts will be found in the case of *Schmidt* v. *Gaukler*, 156 Mich. 243 (120 N. W. 746).

Among the corporate powers of the corporation, as specified in its articles of association, are the following:

"To issue bonds, debentures, or obligations of this corporation from time to time, for any of the objects or purposes of the corporation, and to secure the same by mortgage, pledge, deed of trust, or otherwise."

The by-laws contain, among others, the following provisions:

"The property and business of the company shall be managed and controlled by a board of three directors who shall at all times be stockholders, and at least one of whom shall be an actual resident of Delaware.    *    *    *

"Regular meetings of the directors shall be held on the fourth Monday of each month at the office of the company in Detroit, State of Michigan, at twelve o'clock noon, or by order of the directors elsewhere, on a day and at an hour to be fixed by the board.   No notice of regular meetings of the board shall be necessary.   A majority of the whole board of directors shall be necessary at all meetings to constitute a quorum for the transaction of business. Special meetings of the board may be called by the president on three days' notice to each director, either personally or by wire; special meetings may be called in like manner on the request in writing of two directors."

Director Davis never came to Detroit and the minutes show that he never attended any of the directors' meetings; and that he never was sent any notice of any meeting.   Mr. Gaukler, president of the company, and Mr. Dreher, secretary, were in absolute and complete charge of all the business of the company and signed all agreements and conveyances in its behalf.

From the decree entered in favor of complainant defendants have appealed to this court.

Counsel for defendants concede that the bond issue was legal and that the mortgage is a lawful security as to the $42,000 worth of bonds sold, but contend as to the $38,000

of bonds, as averred in the cross-bill of the Detroit Trust Company:

"That said attempted pledge was wholly illegal, being entirely beyond the scope and purpose of said trust mortgage and the resolution authorizing the issue of said bonds, beyond the scope and powers of said Electric Park Amusement Company as a corporation, and beyond the scope and powers of the officers and directors of said Electric Park Amusement Company, and in violation of the authority given by the stockholders to the directors of said Electric Park Amusement Company for the sale of said bonds; and that the action of the officers and directors of said company in so attempting to pledge said bonds, was taken at an illegal meeting thereof, if any, in violation of the requirements of the by-laws of said company, all of which facts were fully known, at the time, by said Union Trust Company, which dealt with the matter under such circumstances as to put said Union Trust Company upon inquiry as to the legality of said transaction, in all of its phases."

The important question is whether the pledge of the $38,000 of bonds was beyond the power of the corporation to make, under any circumstances. Counsel for defendants argue that the provision of the charter empowering the corporation "to issue bonds, etc., * * * and to secure the same by mortgage," etc., considered in connection with the general corporation laws of Delaware prohibiting the exercise of "any other corporate powers, except such incidental powers as shall be necessary to the exercise of the powers so given," amounts to a statutory prohibition against pledging the corporation's bonds. In the language of counsel:

"The mortgage in question in this case covered all of the corporation's real estate and 'also all other property and assets, real and personal, of every name and nature, which the said amusement company now owns or may hereafter acquire.' The bonds secured by said mortgage became the debts, not property, of the corporation, as soon as issued and sold as the stockholders prescribed; the bonds were never property of the corporation that could be pledged to secure other debts; they were debts only to

secure which property of the corporation could be pledged. The quotation from the corporate powers of the company, on page 15 of complainant's brief, has no other meaning. The power 'to issue bonds * * * and to secure the same by mortgage, pledge, deed of trust, or otherwise,' does not mean power to issue bonds and secure other debts by pledge of those same bonds."

We do not so construe the charter provision. Conceding that the power "to issue bonds, debentures or obligations * * * and to secure the same by mortgage, pledge, deed of trust or otherwise," does not contemplate the issuing of bonds and the securing of the same by a pledge of the bonds so issued, it does not follow that the charter provision did not contemplate the issuing of "obligations" and the securing of them by a pledge of corporate bonds. The contract note for $30,400 is denominated in its terms "this obligation," and we think it was an obligation within the meaning of the charter provision. *Emerson* v. *Steel & Spring Co.*, 100 Mich. 127 (58 N. W. 659); *Hill* v. *Bloom*, 41 N. J. Eq. 276.

The company had express power, therefore, to secure the payment of the obligation in question by the pledge of any property which could be pledged. We have no doubt that the mortgage bonds were a proper subject of pledge and this, notwithstanding the resolution of the stockholders. Jones on Pledges (2d Ed.), §§ 70-74; 2 Thompson on Corporations, § 1192; *Union Cattle Co.* v. *Trust Co.*, 149 Mass. 492; *William Firth Co.* v. *Trust Co.*, 122 Fed. 569; 3 Cook on Corporations (6th Ed.), § 709; *New Memphis Gaslight Co. Cases*, 105 Tenn. 268; *Hatch* v. *Coddington*, 95 U. S. 48.

The remaining question on this branch of the case is whether the pledge was invalid because of the failure to notify the third member of the board of directors of the special meeting at which the resolution was adopted. It is apparent that notification of Davis would have been an idle formality, since he never attended the meetings of the corporation in Michigan, where its entire property was

located.   The corporation permitted Gaukler and Dreher to exercise all the functions and powers of the directorate, and there is no evidence that any other stockholder or director is complaining, but they alone appear to be carrying on this litigation, setting up the falsity of their own certificates to defeat a just debt.   The contract was one within the lawful powers of the corporation; it received $40,000 of money on the first pledge of bonds, which it used for its lawful purposes; it paid from the proceeds of its sales of bonds a large part of this indebtedness to the Union Trust Company; six months later it received $30,400 more, which it also applied to its own proper purposes, and not until September 23, 1907, nearly two years after the making of the first pledge, did it raise any question as to the validity of the pledge.   Under such circumstances the corporation must be deemed to have ratified the action of the two directors in pledging the bonds and to be estopped to question its validity.   *Jones* v. *School District*, 110 Mich. 363 (68 N. W. 222); *Clement, Bane & Co.* v. *Clothing Co.*, 110 Mich. 458 (68 N. W. 224).

The decree of the circuit court found that the Detroit Lumber Company was entitled to collect on the coupons attached to the $38,000 of bonds only from September 23, 1907.   The lumber company has appealed from this portion of the decree, claiming that it is entitled to collect on the interest coupons from May 10, 1907, to which time the interest had been paid on the indebtedness secured by the bonds.   We are of the opinion that the position of the lumber company is well taken and that the decree should have made May 10th the starting point.   *Warner* v. *Iron Co.*, 3 Woods (U. S. C. C.), 514.

By the agreement of the parties the amusement company assigned its interest in the bonds to the lumber company, subject to the lien of the Union Trust Company "as collateral security to the payment of the debt of said party of the first part to said party of the second part," and the lumber company, by its purchase of the bonds, be-

came the owner of both liens, and is entitled to enforce both, subject to an accounting for the surplus, if any.

The remaining question for our consideration relates to the compensation of the trustee and its counsel. With reference to this subject, the circuit judge said:

"As far as the compensation to be allowed this complainant is concerned, that is the only other thing I have left to consider. That is a matter that is very difficult, at all times, for a court to pass upon, and, I confess, it is more or less of an embarrassment to pass upon it. As far as the solicitors of record are concerned, there can be no doubt that, at different times, they have acted in connection with this matter in three different capacities, and there can be no doubt, at those times, they were entirely within their rights, and doing it with entire propriety. They were interested as solicitors for the trustee under the first mortgage; they were interested as solicitors for the trustee under the second mortgage; they were interested as solicitors for the trust company itself, as a creditor. How to tell when they were acting in one capacity, and when they were acting in another, is something that I am not going to attempt to do, or reconcile, because it is perfectly obvious that, at some time, what they did was for their benefit in all three capacities, and, at other times, it was only for the benefit, possibly, in one or two capacities. For example, in the litigation to which reference has been had, in the *Schmidt Case*, they appear to have gone into that litigation in one capacity, and come out of it in an entirely different capacity, as I read the record, in the Supreme Court's opinion. From my knowledge of these counsel, and my belief in their integrity, I have no reason to question, nor has it been questioned, in this proceeding, that they were taking every step according to their best and conscientious judgment. That being true, when they swear, under oath, they think their services, as rendered—without going into particular details, which I find I am to blame for, for not hearing—were worth $2,500, I see, under the circumstances of this litigation, as they have been disclosed before me, in this hearing, no particular reason whatsoever to question that bill. That being true, I think I will allow it as presented. The same remarks apply with equal force to the charges of the trustee, and you may prepare a decree accordingly."

As stated in the opinion and as shown by the record, the court refused to permit the defendants to go into the details of the services or to clearly separate those which were a proper charge in this suit from those which were not. Under such circumstances, we are constrained to remand the case for further proofs upon this subject. Upon hearing the further proofs, upon this subject alone, a decree may be entered by the circuit court in accordance with this opinion and the further finding of such court.

BIRD, C. J., and McALVAY, BROOKE, and STONE, JJ., concurred.