UNION TRUST CO. *v.* ELECTRIC PARK AMUSEMENT CO.

1. FORECLOSURE—PRACTICE—NOTICE OF PROCEEDINGS.

    While notice of filing of a decree of foreclosure and of the steps taken to advertise and sell is required by the rules and practice of the court of chancery, a defendant who had actual notice in season of the sale and report of sale, and whose attorney attended the sale and filed exceptions to the commissioner's report, was not prejudiced by complainant's omission to give formal notice.

2. SAME—DECREE—APPEAL AND ERROR—SUPREME COURT.

    Where a decree of foreclosure as filed in the Supreme Court required payment to be made to reinstate defendant under the mortgage on or before January 5th, but was not signed and filed until January 7th, the defendant who was allowed the statutory right to redeem within six months after sale, which did not take place for two months, could not complain.

3. SAME—TAXES—SURPLUS.

    Taxes paid by the complainant after decree and before sale were properly allowed to complainant, who bid in the premises for the amount due, including them.

4. SAME.

    As mortgagee complainant would be entitled to an equitable lien for such amounts, and to reimbursement out of any surplus arising from the sale of the premises.

5. SAME.

    A party relying on irregularities must complain promptly, or lose his right to relief.

Appeal from Wayne; Murfin, J. Submitted November 20, 1911. ( Docket No. 62.) Decided March 12, 1912.

Bill by the Union Trust Company, trustee, against the Electric Park Amusement Company, Electric City Amusement Company, and Detroit Trust Company, trustee, for the foreclosure of a mortgage. From an order overruling their exceptions to the commissioners' reports of sale under a decree, defendants appeal. Affirmed.

*Russell, Campbell, Bulkley & Ledyard* and *E. T. Berger*, for complainant.

*Thomas A. E. Weadock*, for defendants.

STEERE, J.   This record presents two appeals taken by three of the defendants, the Electric Park Amusement Company, Electric City Amusement Company, and Detroit Trust Company, from orders of the Wayne county circuit court in chancery overruling defendants' exceptions to preliminary and final reports of the circuit court commissioner made on the sale of certain premises under a decree of foreclosure by this court.   A former opinion in this suit, leading up to said decree, is reported in 163 Mich. 687 (130 N. W. 306).   By that opinion all questions involved up to that time in the protracted litigation were adjudicated, except the matter of compensation for services of the trustee and its counsel.   The lower court had made an allowance for such services in the sum of $3,500, without sufficient proof, as this court held.   Upon that subject it was said:

"As stated in the opinion and as shown by the record, the court refused to permit the defendants to go into the details of the services, or to clearly separate those which were a proper charge in this suit from those which were not.   Under such circumstances, we are constrained to remand the case for further proofs upon this subject. Upon hearing the further proofs, upon this subject alone, a decree may be entered by the circuit court in accordance with this opinion and the further finding of such court."

Said opinion was filed on July 14, 1910, following which complainant and its counsel filed in due form a written waiver of all claims for allowance of compensation and fees for services, in relation to which alone the case had been remanded for further proceedings, and also filed at the same time a written consent that final decree might be entered in this court according to the opinion rendered, making no allowance in such decree for fees or compensa-

tion for services. In the meantime a motion for rehearing had been made by the defendants, heard, and denied on December 8, 1910. After these proceedings, steps were taken to obtain from this court a final decree disposing of the whole matter. On January 3, 1911, opposing counsel appeared before the justice who wrote the opinion, each presenting a draft of such form of decree as was desired and such as each side claimed to be entitled to under the opinion. On this hearing before the justice for settling a decree, defendants' counsel asked, among other things, 30 days' additional time for payment before sale. Complainant's counsel strenuously opposed this, contending that there had been constant delays at the instance of defendants, and the matter should now be speedily disposed of. The justice to whom this matter was presented, after hearing both parties, took copies of their proposed decrees, stating to them that on January 7, 1911, he would be able to confer with his associates, when a decree would be settled and handed down. This was done, and the decree was signed, entered, and recorded in this court, and became a public record on that date. It was certified from this court on January 10, 1911, and the record, remanded with said decree from this court, was filed with the clerk of the Wayne county court on January 13, 1911. On January 21, 1911, the case was enrolled at the instance of complainant.

The decree, after certain introductory matter, determined, in paragraphs 1 and 2, that the total amount due on the mortgage which was being foreclosed, including all interest, insurance, taxes, and other expenses up to that date, aggregated $100,961.33. Paragraph 3 of said decree provides in part as follows: That the defendant Electric Park Amusement Company shall pay to said complainant all of the sums mentioned in paragraphs 1 and 2 of the decree, with interest at the rate of 5 per cent. per annum, together with costs of the circuit court to be taxed, if not already taxed, "all of which payments shall be made on or before the 5th day of January, 1911,"

in default whereof the premises shall be sold at public auction by the circuit court commissioner of Wayne county "at any time after the 7th day of January, 1911." Said section further provides that, after confirmation of the sale, the commissioner shall pay out of the proceeds the expenses of this suit in the court below and of said sale, "neither party to recover costs in this court." He is also required to pay all taxes, insurance, assessments, liens, and expenses, with interest thereon, and the principal and interest of the bonds outstanding under the mortgage, amounting to $95,134.48, and "any surplus remaining after the payment of the foregoing sums shall be distributed according to the further order of this court." Section 8 of said decree provides for reinstatement of the defendant amusement company under the mortgage on payment to the complainant of $20,961.33, with interest from the date of the decree, being the stipulated amount found due at the time of the decree according to the terms of the mortgage, had the total sum not been declared due by reason of default in the payment of an installment, "together with any taxes, assessments, rates, charges, labor or mechanics' liens, which may be levied or imposed upon said property, which were due and unpaid at the date of the payment, or which may have been paid by the complainant, together with interest on such paid taxes, assessments, rates, charges," etc., at the rate of 5 per cent. per annum, "and upon such payment and performance the trustee shall discontinue this suit and all proceedings taken hereunder." The decree contains the usual statutory six months' time in which to redeem after sale and all other formal matters usually found in a decree of foreclosure.

Pursuant to the terms of said decree, the commissioner proceeded to advertise and sell the property covered by the mortgage. The first publication of foreclosure sale appeared in the Detroit Legal News on January 21, 1911, and the sale took place on March 7, 1911. Notice of tax-

ation of costs was served on defendants' solicitor March 6, 1911. Preliminary and final reports of the sale were filed by the commissioner, the latter on April 5, 1911, and exceptions to the same were filed by defendants. These exceptions were argued and overruled and the reports confirmed by the Wayne circuit court in chancery, from which orders this appeal was taken. At the sale the Union Trust Company, trustee, was the only bidder, and the property was struck off to it for $104,903.56, being the amount due by the decree, including $3,027.66 for taxes which complainant paid before sale, but after decree. No formal notice was given defendants' solicitor of filing said decree, or of the steps taken to advertise and sell. In those respects certain of the proceedings do not strictly comply with the rules, but the record shows he had actual notice, and was fully advised, thereof in ample time to have taken any steps necessary to protect defendants' rights.

The first published notice of sale was seen by him two days after its issue. He was served with notice of taxation of costs before sale. A person from his office attended the sale and took memoranda thereof. He was notified of the commissioner's report of sale, and filed exceptions thereto.

Complaint is made of a palpable clerical error in dates found in the decree, wherein it reads that payment is required to be made on or before January 5th, the decree being signed on January 7th. The hearing for settlement of decree was on January 3d, and apparently it was the intention, reckoning from then, to give two days' time, but the decree not being signed until the 7th, an error in copying, or omission to advance the date, resulted in the inconsistency. According to his own affidavit, this was discovered by the defendants' solicitor on January 23, 1911. Good faith with the court would suggest calling attention to this when discovered, but the worst that can be said of it is that no time for payment before default was specified. We think the decree valid without specifically fixing any date for redemption in the portion of the decree mentioned.

The present statute gives right to redeem within six months after sale. The provisions of paragraph 8 of the decree, heretofore referred to, expressly provided that defendants, at any time before the date set for sale of the premises, might, by paying installments in default, and costs, be reinstated under the mortgage, whereupon complainant would be compelled to discontinue this suit, and dismiss all proceedings.

The sale did not take place until two months after the decree was settled. Defendants, whose solicitor participated in settlement of said decree, had two months thereafter to pay up installments and be reinstated before sale, and eight months in which to redeem. Defendants had ample notice and time to redeem. *Redfield* v. *Reid,* 148 Mich. 545 (112 N. W. 124).

Exception was taken to the final report of sale and confirmation thereof because a surplus of $3,027.66 was applied in payment of taxes, instead of being reported to "be distributed according to the further order of this court." The amount due under the decree was $101,875.92. The taxes paid after decree and before sale were added, and the property struck off for the $104,903.56 total. If complainant had not paid these taxes by May 1st, right of redemption from tax sale would have been lost. We think this was permissible and within the spirit of the decree, which makes special reference to any taxes, assessments, rates, and liens due and unpaid, which may be paid by complainant.

It appears by the supplemental record that on August 24, 1911, the premises were redeemed by Josephine Gaukler, who owned the equity of redemption, having foreclosed a second mortgage on the property, and also obtained deeds from defendants. She paid the full amount required to redeem from this foreclosure to the register of deeds, reserving all rights which she may be entitled to under a final decision in this case. She having acquired the original title of defendants and redeemed the property, this so-called surplus would be hers. It was

applied in payment of taxes on her property and redemption of the same from tax sales.

Complainant paying such taxes as mortgagee would succeed to the lien therefor on the land, and in a court of equity would be entitled to reimbursement out of any surplus on foreclosure sale. *Noeker* v. *Howry*, 119 Mich. 626 (78 N. W. 669).

The matters complained of are at most irregularities, known to defendants at the time of their occurrence or soon thereafter. A party relying upon irregularities must act with the utmost promptness in order to obtain relief. *Goodwin* v. *Burns*, 21 Mich. 211; *Lyon* v. *Brunson*, 48 Mich. 194 (12 N. W. 32).

Upon a review of this whole case, we are not only satisfied that defendants had full knowledge of all facts on which claim for relief is based and have no substantial and meritorious grounds of complaint, but the only result of granting the relief they ask would be to further protract this litigation and delay the inevitable collection of money borrowed from, and heretofore found honestly due, complainant. This suit, to foreclose a mortgage and collect borrowed money, was begun on May 13, 1908. Arthur H. Gaukler, president of the defendant Electric Park Amusement Company, examined as a witness in this case, testified as follows:

"*Q.* I ask you whether or not all this litigation  *  *  * introduced by way of defense to the Schmidt mortgage, by way of defense to the cross-bill and otherwise, to the first mortgage, was directed by you or Mrs. Gaukler in this business for the purpose only of delaying these proceedings as long as possible in coming to their ultimate foreclosure?

"*A.* Mr. Radford was given direct orders by me to use every legal means of staving off the final day as long as possible, and he has that order now."

The voluminous records in this case and numerous technical and dilatory proceedings it discloses indicate clearly that the mandate of Gaukler has been ingeniously and tenaciously followed with marked success.

There comes a time when strife should end in every contention.    In the final winnowing of this case we fail to discover any remaining equities for defendants, and think the orders of the circuit court should stand affirmed, with costs.

MOORE, C. J., and MCALVAY, BROOKE, and BLAIR, JJ., concurred.