RADFORD *v.* GAUKLER.

1. BILLS AND NOTES—FRAUD—QUESTION FOR JURY.

In an action by an attorney against his client to recover upon certain notes given for legal services, wherein defendant claimed fraud on the part of plaintiff in inducing her to sign the notes by false representations that she was free and clear of a certain claim as to which a portion of such services was rendered, *held* that a question of fact for the jury was presented.

2. SAME—FRAUD—EVIDENCE—SUFFICIENCY.

Evidence *held* insufficient to sustain a finding that plaintiff had fraudulently procured the execution by defendant of the notes sued on, where the testimony of defendant and her son as to such fraud was contradicted on cross-examination and by averments conclusively showing the true state of facts contained in her answer to a certain bill. MOORE, J., dissenting.

Error to Wayne; Chester, J., presiding. Submitted October 11, 1916. (Docket No. 124.) Decided May 31, 1917. Rehearing denied September 28, 1917.

Assumpsit by George W. Radford against Josephine Gaukler, survivor of herself and Arthur H. Gaukler, deceased, upon two promissory notes. Judgment for defendant. Plaintiff brings error. Reversed.

*Harrison Geer*, for appellant.

*Bailey & Bradley* (*Otto Kirchner*, of counsel), for appellee.

MOORE, J. (*dissenting*). Plaintiff brought suit on two promissory notes for $5,000 each made by Josephine Gaukler and Arthur H. Gaukler, dated October 21, 1911, and due October 1, 1912. The defendant, in the notice attached to her plea of the general issue, set

up several defenses. At the close of the evidence each of the parties moved for a directed verdict. The court denied both of the motions, and submitted one question only to the jury, namely: Were the notes procured by fraud? The verdict of the jury was for the defendant. The plaintiff moved for judgment in his favor *non obstante veredicto,* pursuant to Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1915, § 14568 *et seq.*). This motion was denied, and judgment of no cause of action was entered. Later plaintiff moved for a new trial, which motion was also denied. The case is before this court on assignments of error.

The plaintiff, an attorney, was retained by the defendant and her son, Arthur H. Gaukler, to look after legal difficulties growing out of their connection with the Electric Park Amusement Company and its successor, the Electric City Amusement Company, as stockholders, bondholders, and indorsers of the commercial paper of said companies. Some of this litigation is found in *Electric Park Amusement Co.* v. *Wayne Circuit Judge,* 155 Mich. 640 (119 N. W. 1095), *Schmidt* v. *Gaukler,* 156 Mich. 243 (120 N. W. 746); *Union Trust Co.* v. *Amusement Co.,* 163 Mich. 687 (130 N. W. 306); *Commercial National Bank* v. *Gaukler,* 164 Mich. 215 (129 N. W. 195); *Kelly* v. *Gaukler,* 164 Mich. 519 (129 N. W. 703); *Commercial National Bank* v. *Gaukler,* 165 Mich. 403 (130 N. W. 655); *Union Trust Co.* v. *Amusement Co.,* 168 Mich. 574 (135 N. W. 115). In 1908 the Restrick Lumber Company was pressing a large claim against the Electric City Amusement Company, which was practically owned by Mrs. Gaukler and her son, and an arrangement was made by which Mrs. Gaukler turned over to them notes of her brother and entered into a written contract containing the following among other provisions:

"Whereas, for a valuable consideration, the receipt of which is hereby acknowledged, said C. W. Restrick

Lumber Company hereby transfers to Josephine Gaukler all its claims as creditor of the Electric City Amusement Company; and in part consideration thereof the said Josephine Gaukler hereby agrees to have issued to said C. W. Restrick Lumber Company twenty thousand seven hundred dollars out of the stock of the said proposed new company, when organized, which may be allocated to said Josephine Gaukler."

In July, 1910, an order was entered in the Wayne circuit court disbarring the plaintiff. That proceeding was removed to this court by certiorari, and was pending here until February 12, 1912, when the order of the lower court was confirmed. The plaintiff sought to get a settlement and payment from the Gauklers for the services rendered by him. His claim found its way into the hands of Mr. Stellwagen, an attorney, and to him was sent the following:

"DETROIT, Oct. 19, 1911.

"MR. A. C. STELLWAGEN,
    "City.
*"Dear Sir:* As a tribute to Mr. Radford's legal genius and in gratitude for the noble services he so ably rendered during the past 4½ years, we will be glad to accept his suggestion of $45,000 as a proper amount to be paid for legal services for all the Gauklers in their various capacities, subject, however, to conditions hereinafter following: $25,000.00 we will pay cash today; $12,500.00 we will pay on or before Oct. 1, 1912; $7,500.00 has already been paid; $45,-000.00 is the total. This is to cover all services, whether rendered by Mr. Radford and counsel, past and future, already performed or yet to be rendered, in the Electric Park foreclosure case now pending in the Supreme Court. Also filing of bill and all services therewith necessary to the procurement of decree to clear cloud from title to certain land in Lake township, Michigan, recently purchased by me from William and Barney Allor; the court costs, however, to be paid by me. Also all other services as may be required up to January 1, 1912. Also all services in connection with the formation of any corporations already organized and yet to be organized by us before Jan. 1,

1912. If the conditions herein named are acceptable, we will be glad to pay the $25,000 item in cash before the closing of the banks to-day.

"Respectfully yours,
"Josephine Gaukler."

The offer contained in this letter was not accepted. The record contains the following:

" 'Article of agreement entered into on this 21st day of October, 1911. Whereas, George W. Radford has been counsel for Josephine Gaukler and Arthur H. Gaukler since July 15, 1907, in various matters; and whereas, it is agreed by and between the respective parties hereto that the total amount for all services rendered or to be rendered to January 1, 1912, as stated below to be received by said George W. Radford shall be forty-five thousand dollars; and whereas, George W. Radford has already received on account of said services the sum of seven thousand five hundred dollars, leaving a balance of thirty-seven thousand five hundred dollars; and whereas, it is mutually agreed that this $37,500.00 shall be paid as follows: Twenty-five thousand dollars in cash, and twelve thousand five hundred dollars in three notes, signed by Josephine Gaukler and Arthur H. Gaukler, payable on or before October 1st, 1912, as follows: One for $2,500.00; one for $5,000.00; one for $5,000.00:

" 'Now, therefore, it is mutually agreed that the services included in this agreement cover the work required to be done in the Supreme Court for completion of the foreclosure case with reference to Electric Park, now pending in the Supreme Court of this State; also the services of counsel; also the filing and completion of a bill to clear cloud from title to land in Lake township recently purchased by Josephine Gaukler from Barney and William Allor; and also all services in connection with the completion of the Detroit Racing Railway corporation organization and a corporation to manage and hold the Gaukler lands to be organized by us before January 1, 1912. Said George W. Radford hereby acknowledges receipt of twenty-five thousand dollars. The notes for the twelve thousand five hundred dollars are to be delivered on October 21, 1911.

" 'Witness our hands and seals on the day and year first above written at Detroit. Michigan.

" 'Josephine Gaukler.
" 'Arthur H. Gaukler.
" 'George W. Radford.'

"*Mr. Kirchner:* Will you admit that the notes sued on are the notes mentioned in this agreement?

"*Mr. Geer:* Yes."

As before stated, each of the parties at the close of the evidence asked for a directed verdict. It was the claim of the defendant that some of the provisions of the agreement which we have quoted, and which was given at the time the notes were made, were illegal, because the plaintiff, at the time the agreement was made, had been disbarred, and, as the notes were given in part consideration of said agreement, they are void. It was also claimed the notes were obtained by reason of false statements as to the status of the claim of the Restrick Lumber Company. The trial court was of the opinion that there was no such illegality in the agreement entered into by the plaintiff as to void the notes, but left the question of fraud to the jury as follows:

"Defendant claims that this contract, made in 1908, was left in Mr. Radford's hands, and that she had no further knowledge or information regarding it, excepting the representations which she claims Radford made to her regarding it, and which she claims were fraudulent representations, until after October 21, 1911; that is, she claims she has no further knowledge regarding it until October 21, 1911, excepting the representations which Mr. Radford made to her regarding it.

"Defendant claims that, prior to making the contract and notes on October 21, 1911, Mr. Radford, for the purpose of getting her to sign the contract and deliver the notes in question, falsely and fraudulently represented to her that the Restrick Lumber Company claim was all taken care of, and that she was free and clear from any obligations to the Restrick Lumber

Company, and that she was not in any way indebted to the Restrick Lumber Company; and she claims she believed these statements to be true, and that she relied on them as true, and was induced by such statements to make the contract and give the notes in question. She further claims that the statements were false, and by reason of these false statements she has been defrauded and deceived in the giving of these notes and the entering into of the contract of October 21, 1911, and that, if these representations had not been made to her, she would not have given the notes involved in this suit. * * *

"On the part of the plaintiff, Mr. Radford, he denies that he ever represented to the defendant, Mrs. Gaukler, or any one, that the Restrick Lumber Company claim was all taken care of, or that she was free and clear from any obligations to the Restrick Lumber Company, or that she was not in any way indebted to the Restrick Lumber Company; and plaintiff, Mr. Radford, insists that the negotiations between him and defendant which led to the making of the notes sued upon were not commenced until the middle of October or thereabouts, and that from at least two weeks before the time of the commencement of such negotiations they were conducted through Mr. Stellwagen and Arthur H. Gaukler until long after this contract was signed. Plaintiff claims that the defendant never saw him in regard to these matters, and that the offer contained in the letter of October, 1911, was made by her, irrespective of any alleged representations made by him, and that she could not have relied upon any such representations in making the offer. Plaintiff claims that defendant signed Exhibit J, which was the Restrick contract, bearing date March 4, 1908, and that she knew the contents of that contract, and knew that it was her duty to allot to or turn over to the Restrick Lumber Company the stock of the new company which was to be organized, and plaintiff insists that she all the time knew that the Restrick matter had not been closed up.

"Now, in a general way, gentlemen, as I understand, this is the claim on the part of the plaintiff.

"Gentlemen, there is but one important question for you to solve; that is, were those notes and the contract

of October 21, 1911, made by defendant because of false and fraudulent representations made by Radford to her under the instructions I shall give you? * * * I charge you that the contract between George W. Radford, Josephine Gaukler, and Arthur H. Gaukler, bearing date October 21, 1911, whereby the parties thereto agreed upon the amount to be paid to plaintiff for his services rendered to defendant and her son, was a valid contract and enforceable, unless defendant is relieved because of plaintiff's fraud. You are also instructed that no question has been raised by the defendant as to the services being worth the amount contracted by her to be paid to the plaintiff for them, providing you find that he did render the services which he represented to her he had performed, and it is not for you to say whether the amount agreed upon is more than you think it ought to be or not; the amount of fees is not for your determination.

"You understand, from this statement I have given you of this case, that defendant claims that she is relieved from the payment of these notes because of the claim of fraud practiced on her by plaintiff. Fraud is defined as a false statement or statements, which statements must be material and well calculated to influence the person or persons to whom they are made, and that such statements are made for the purpose of inducing another to part with money or other valuable things. And to establish the claim of fraud it must be shown by defendant, by a preponderance of evidence, *first,* that plaintiff made a material representation and that it was false; *second,* that the person to whom such false statements are made must believe them to be true; *third,* that the person to whom they are made must rely on them as true, and, *fourth,* must be induced by them to part with his or her property (in this case to enter into the contract and make and deliver the notes in question) ; *fifth,* such false representations must actually deceive the persons to whom they are made and the person must have been defrauded thereby. Fraud cannot be presumed, but must be established by a preponderance of the evidence, and each of these elements of fraud must be established by a preponderance of the evidence; and if defendant fails in any of them then she has failed to establish the

claim of fraud, and if she fails to establish the claim of fraud then your verdict is for the plaintiff."

The court practically repeated this statement again in the charge, but it is not necessary to quote further.

The important question, then is: Was there testimony that justified the submission of this question to the jury? Mrs. Gaukler testified in part as follows:

"*Q.* What did Mr. Radford say to you, if anything, before you signed that agreement and that note?

"*A.* Why, he told me he cleared everything away, all trouble; especially he mentioned the Restrick affair, that he saved us $20,000 on the Restrick and everything else—that everything was clear.

"*Q.* What do you mean by everything else was clear?

"*A.* All our obligations with anything and everything.

"*Q.* What, if anything, did he say about debts being clear?

"*A.* Well, he said he saved us over $20,000 on the Restrick affair.

"*Q.* What, if anything, did he say about the Restrick affair being settled?

"*A.* He said he settled everything. * * *

"*Q.* Answer this question 'Yes' or 'No,' Mrs. Gaukler: Did Mr. Radford say anything, immediately before the signing of the note and the contract, that induced you to sign the notes and the contract; 'yes' or 'no,' did he say anything?

"*A.* Yes, sir. * * *

"*Q.* Now, what did he say?

"*A.* He said that he cleared everything for us; that we were free and clear of all debts and everything. And on that we accepted the contract.

"*Q.* Now, then, what did he say about the Restrick contract, if anything—obligation to Restrick?

"*A.* He said he saved us $20,000 on the Restrick deal.

"*Q.* Well, if anything, what did he say—that was settled or not?

"*A.* Not a word.

*Q.* What is it?

"*A.* He said it was clear; that it was all settled.

"*Q.* Now, did you believe what Mr. Radford said?

"*A.* I did.

"*Q.* If he hadn't told you those things—

"*A.* I wouldn't have signed that contract.

"*Q.* You wouldn't have signed the contract; would you have signed the notes?

"*A.* No, sir."

A son of Mrs. Gaukler testified in part as follows:

"*Q.* What, if any, representations did Mr. Radford make to your mother touching her freedom or liability from debt.

"*A.* He told my mother that he had settled the second mortgage bonds. He said he had considerable work, which we knew was so. He said that 'I saved you, when the Restrick settlement was made for $5,000, I saved you over $20,000;' and he said, 'I ought to have credit for that, and that is why I am asking $75,000.' And mother says, 'That is exorbitant;' and he says, 'Well,' he says, 'I settled everything, and saved you everything you have got, and I am entitled to this money;' and he says, 'Mrs. Gaukler, you are just as free from debt and legal entanglements as a new-born babe.' Those are his exact words; he says, 'Mrs. Gaukler, I can't express it any other way, except that way, as a new-born babe;' and he repeated it several times and he has repeated it since.

"*Q.* Well, now will you state on what occasion he repeated it since, and what led up to his doing so?

"*A.* I think it was the fore part of April; I am not sure. I think it was at the date of the signing of the lease of the Detroit Racing Railway Company; we had been in Mr. Radford's office a number of times, and it was right after the death of my brother, and she was tired, and I guess heartsick, and she had asked Mr. Radford, after he had read the lease—it was quite long, I guess three or four pages—and she said to Mr. Radford, 'Is there anything else?' and he said, 'No, not anything; you may go home and rest easy; nothing to worry you whatever;' and he repeated on that particular day that she was just as free from debt and cares as a new-born babe."

This testimony was contradicted by the plaintiff, and it is the claim of his counsel that it is shown to be untrue by the cross-examination of the witnesses, and that Mrs. Gaukler is contradicted by the averments of an answer filed by Mrs. Gaukler to a bill of complaint filed by the Restrick Lumber Company to enforce the contract made in 1908. It is also claimed Mrs. Gaukler, having signed the contract of 1908, knew she had not complied with its terms, and is so discredited that she ought not to be believed.

As we have seen, the testimony was very contradictory. The circuit judge, who saw and heard the witnesses, in overruling the motion for a new trial expressed himself as of the opinion that the verdict was not against the evidence, nor against the weight of the evidence. We think there was a question of fact, which was properly submitted to the jury. See *Gardiner* v. *Courtright,* 165 Mich. 54 (130 N. W. 322); *People* v. *Sartori,* 168 Mich. 308 (134 N. W. 200); *Reed* v. *McCready,* 170 Mich. 532 (136 N. W. 488); *Eesley Light, etc., Co.* v. *Power Co.,* 172 Mich. 78 (137 N. W. 663); *Pike* v. *Railroad Co.,* 174 Mich. 167 (140 N. W. 592); *Druck* v. *Lime Co.,* 177 Mich. 364 (143 N. W. 59); *McGary* v. *Motor Co.,* 182 Mich. 345 (148 N. W. 722); *Darling* v. *Railway Co.,* 184 Mich. 607 (151 N. W. 701); *Silverstone* v. *Assurance Co.,* 187 Mich. 333 (153 N. W. 802); *Simmer* v. *Cutter's Estate,* 194 Mich. 34 (160 N. W. 605).

Because of the finding of the jury upon the question of fraud, it is unnecessary to discuss the other assignments of error.

Judgment should be affirmed, with costs to defendants.

OSTRANDER, J. Examination of the record has convinced me that the testimony of Mrs. Gaukler and of her son, a portion of which is set out in the opinion

of Mr. Justice MOORE, which relates to certain alleged representations made by Mr. Radford, is so contradicted by cross-examination and by averments conclusively showing the true state of facts, contained in the answer of Mrs. Gaukler to the bill of the Restrick Lumber Company, that, if it can be said the issue was for the jury, the verdict, nevertheless, should have been set aside upon motion, as opposed to the weight of evidence. A new trial should be granted.

STONE, BIRD, STEERE, and BROOKE, JJ., concurred with OSTRANDER, J. KUHN, C. J., and PERSON, J., did not sit.