### DAY *v.* GRAND RAPIDS RAILWAY CO.

1. JUDGMENT—DENIAL OF MOTION FOR DIRECTED VERDICT—RESERVING DECISION—NON OBSTANTE VEREDICTO.

> The denial of defendant's motion for a directed verdict without any statement from the judge that decision thereon was reserved under the statute (3 Comp. Laws 1915, § 14568), would not preclude the judge from granting a motion to enter judgment *non obstante veredicto*, where, although the verdict was recorded, judgment thereon was stayed to permit the making of said motion; such proceeding clearly indicating that the judge reserved final decision of the question.

2. SAME—JUDGMENT NON OBSTANTE VEREDICTO ERRONEOUS WHERE QUESTION OF FACT PRESENTED.

> In an action against a street railway company for personal injuries, where defendant pleaded a release, plaintiff's testimony on direct-examination that the release was obtained by fraud, although somewhat contradicted by her on cross-examination, made a case for the jury, since it was their province, and not that of the court, to say which of plaintiff's versions was to be believed, and the entry of judgment *non obstante veredicto* was error.

Error to superior court of Grand Rapids; Dunham (Major L.), J. Submitted February 7, 1922. (Docket No. 95.) Decided March 30, 1922.

Case by Jessie Day against the Grand Rapids Railway Company for personal injuries. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Reversed, and judgment entered on the verdict.

*Smedley, Linsey & Shivel,* for appellant.

*Knappen, Uhl & Bryant,* for appellee.

CLARK, J. Action for personal injuries. Defendant with its plea gave notice of settlement of the claim, that defendant had paid plaintiff $115, and had paid her doctor's bill, which had been accepted by plaintiff in full satisfaction and discharge of liability and that she had signed a release accordingly. Plaintiff claimed a continuing injury and disability following the accident. After plaintiff had consulted a physician a number of times and after he had declined to express an opinion of when she would be able to return to work, she was approached by a claim agent of defendant with whom the settlement was negotiated. Plaintiff testified:

"*Q.* He didn't wait for you to come down to their office?

"*A.* No, that was why I was so surprised that last time he came, he came the afternoon of the day that I had been looking for Dr. Beel, and Dr. Beel hadn't been there.

"*Q.* He hadn't been there yet?

"*A.* No.

"*Q.* That was the day—

"*A.* That I made the settlement with them.

"*Q.* Claimed that the settlement was made?

"*A.* Yes.

"*Q.* What time of the day did Mr. Kerwin get there?

"*A.* Along in the afternoon, 3 or 4 o'clock, somewhere about that time.

"*Q*. Tell the jury about what he first said, if you will?

"*A*. Why, he just asked after my condition. I told him I hadn't been able to get out at all, and I said Dr. Beel is coming today to make reservation for me over to the hospital.

"*Q*. In that connection, anything said about your condition by yourself, how you were getting along?

"*A*. I said I wasn't getting along, and hadn't been able to do anything, and hadn't even been able to do little light sewing in my own room.

"*Q*. And then what else was said? What did you say about Dr. Beel coming?

"*A*. I said Dr. Beel was coming and he was going to make reservation for me over to the hospital, and I said, I don't want to settle with you until after I have talked with Dr. Beel.

"*Q*. Did you tell him why you wanted to talk to the doctor?

"*A*. Yes, I wanted to find out how long before I could go to work, because I couldn't—I hadn't no other way of living only to go to work.

"*Q*. Did you tell him that?

"*A*. Yes, I told him that, and he says, 'I have seen Dr. Beel, and he says that you will be able to go to work in a few days.'

"*Q*. Then what else did he say?

"*A*. And he said there wasn't any use in dragging it out as he could see any longer, that Dr. Beel assured him that I would be able to go to work.

"*Q*. When?

"*A*. In a few days. He said, now, if we put this two weeks ahead, by that time you surely will be able to go to work, and I said, if Dr. Beel has told you that, Dr. Beel hadn't come as he agreed to, that was the trouble, you know; he was to have come that day, but he hadn't come, and in his place Mr. Kerwin came and stated that he had seen Dr. Beel, and as long as Dr. Beel hadn't come and he did and said that, why, what was I to think, except it was the truth; I believed it.

"*Q*. All right. Then what did you say after he told you that he had talked to Dr. Beel and you would be all right in a few days?

"*A*. I said if Dr. Beel was sure of that, I had just

as soon straighten with him right then as any other time, only I must know that I was able to go to work in a few days.

"*Q*. Then what did he say?

"*A*. And he said he had—he repeated it—that he had seen Dr. Beel, and so on, the same thing over again.

"*Q*. Then what took place?

"*A*. And I signed his paper."

In discussing, on a motion for judgment notwithstanding the verdict, whether there was a question for the jury that the settlement and release had been obtained by fraud and misrepresentation, the trial judge said, in speaking of the testimony quoted, and of other similar testimony:

"If this was the only testimony in the case, it would be a question for the jury, but it is claimed by defendant that in view of her cross-examination, that she did not believe Dr. Beel made such statement," etc.

And the judge then reviewed the testimony of plaintiff in which she made statements in conflict with her testimony quoted. Defendant made a motion for a directed verdict. It was denied without any statement that decision thereon was reserved. See section 14568, 3 Comp. Laws 1915. The case went to the jury, who returned a verdict for plaintiff. The verdict was recorded, but judgment was not entered. There was a stay for the purpose of moving for a judgment notwithstanding the verdict. The motion was made and heard, and judgment for the defendant was entered. Plaintiff brings error.

1. The denial of the motion for a directed verdict without a statement or indication that the question was reserved under the statute is not conclusive. Such denial must be treated here as merely for orderly proceeding. The entry of the verdict without judgment thereon, with a stay to permit a motion for judgment notwithstanding the verdict, indicates sufficiently that

the judge reserved final decision of the question. The cases of *Wulff* v. *Bossler*, 199 Mich. 70, and *Yerkes* v. *Antrim Circuit Judge*, 200 Mich. 443, are not in point, for in both of them judgment had been entered upon the verdict before the motions under said statute were made.

2. The court erred in ordering judgment for defendant. It was not for the court to say which of plaintiff's versions of the settlement was to be believed. On such motion the evidence must be viewed in the light most favorable to plaintiff, and when so viewed, her evidence on direct-examination, and much of what she said on cross-examination, supports her claim of fraud and misrepresentation. Her testimony, though conflicting, made an issue for the jury. *Parnell* v. *Pungs,* 190 Mich. 638, and cases there cited; *Bertha* v. *Regal Motor Car Co.*, 180 Mich. 51; *Marple* v. *Railroad Co.*, 115 Minn. 262 (132 N. W. 333).

The case of *Radford* v. *Gaukler*, 196 Mich. 94, is distinguishable, for the majority opinion states,    *   *   *

"that, if it can be said the issue was for the jury, the verdict, nevertheless, should have been set aside upon motion. as opposed to the weight of the evidence. A new trial should be granted."

Here there was no motion for a new trial, and the question of the verdict's being against the great weight of the evidence is not before us.

Judgment reversed. The cause is remanded with directions to enter judgment upon the verdict as rendered.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.