JONES *v.* SCHOOL DISTRICT NO. 3 OF IOSCO.

SCHOOLS AND SCHOOL DISTRICTS—CONTRACTS—RATIFICATION.

A school district which had provided by resolution for the seating of a school-house is estopped to question the validity of a contract for the purchase of the seats, signed only by the director of the school board, where the other members of the board participated in the payment of the bills for freight on the furniture, and for drawing and setting up the same, and themselves assisted in such work, and the district used the furniture for 15 months before giving notice of an intention to rescind the contract.

Error to Livingston; Smith, J. Submitted June 3, 1896. Decided July 28, 1896.

*Assumpsit* by George W. Jones against School District No. 3 of Iosco, for goods sold and delivered. From a judgment for defendant, plaintiff brings error. Reversed.

*William B. Gildart*, for appellant.
*Louis E. Howlett*, for appellee.

MOORE, J. The plaintiff sued the defendant to recover $97 and interest on a claim assigned to him by the Adjustable School-Seat Manufacturing Company. The case was tried by a jury, who rendered a verdict for the defendant. The plaintiff appeals.

The record shows that in 1892 the defendant erected a new school-house. The old school-house stood upon the same lot. The winter term of school commenced about November 18th, and was held in the old school-house until the 1st of January, 1893, from which time it was held in the new school-house. At a special meeting of the district, held about the middle of November, a resolution was passed "to seat the school-house, and pay for it in two equal, annual installments." The meeting gave no directions as to who should buy the furniture. The school board at this time consisted of Mr. Abbott, director; Mr. Caskey, moderator; and Mr. Miller, assessor. November 22, 1892, the director and the agent of the manufacturing company visited the homes of the assessor and moderator, to have them join the director in giving an order for the seats. They found neither the assessor nor moderator at home. Mr. Miller had corresponded with the agent before this, but the record is silent as to the nature of the correspondence. The director had been getting prices and seeing agents of different manufacturing companies before this. Not finding the other members of the board, the director gave the agent a written order for seats and desks,—the amount of the order being $194, payable $97 on or before January 1, 1894, and $97 February 1, 1895,—signing the order as

director. The seats were shipped in knockdown form to Fowlerville, and were drawn from there by the director and moderator in the latter part of December, 1892, and early in January, 1893. The director and moderator were assisted in putting the furniture into the school-house by the assessor. The director, with the help of three men, set the seats up in the school-house, where they remained and were used by the school district during all its sessions, and were in use when this case was tried in the circuit court, December 28, 1895. Mr. Caskey, the moderator, was paid two dollars, upon a written order, for helping to draw the seats from the station. The freight bills and expenses of setting up the seats in the school-house were paid by the assessor, upon a written order drawn and signed by the director, and countersigned by the moderator.

At the annual meeting in September, 1893, the director made a report to the district, showing the amount of money he had paid for freight, the amount of money he had paid for putting the seats in, and also of the agreement he had made with the manufacturing company. The records show that the report was adopted, though it is claimed by the district that the part of the report which referred to the agreement with the company was excepted from the report as adopted. It is also claimed that at this meeting it was voted that "the school board should enter into no contracts, give no bonds or notes, or pay any money to the school-seat company." This resolution does not appear in the minutes of the meeting. The minutes show that, at the annual meeting of 1894, it was "moved and supported that the minutes of the annual meeting of 1893 stand unapproved. Carried." The record does not show any other action taken at the school meetings.

No action was taken to rescind this contract by any of the school officers, either acting as a board or as individual officers, until April 19, 1894, when the following paper was served on Mr. Abbott:

"IOSCO SCHOOL DISTRICT NO. 3, April 19, 1894.
"M. M. ABBOTT, Director:

"You are hereby requested and directed to cause to be carefully removed, stored, and cared for, the seats now in the school-house of the above-named district,—said seats having been ordered of the Adjustable School-Seat Manufacturing Company, of Marcellus, without authority of this board, and contrary to the resolution of the district qualified voters authorizing this board to act in the matter,—as we decline to ratify the so-called purchase, or pay for said seats. We will be pleased to consult with you as to temporary benches, etc., required until this matter can be adjusted.

[Signed] "B. W. HARFORD, Moderator,
"A. F. WARD, Assessor,
"Majority of School Board."

And on the same day the following notice was mailed:

"IOSCO SCHOOL DISTRICT NO. 3, GREGORY POST OFFICE,
"MICHIGAN, April 19, 1894.
"ADJUSTABLE SCHOOL-SEAT MANUFACTURING COMPANY,
Marcellus, Michigan.

"*Gentlemen:* Your attention is respectfully called to the within copy of a notice this day served on M. M. Abbott, director of this district.

[Signed] "A. F. WARD, Assessor,
"B. W. HARFORD, Moderator,
"Majority of School Board."

The furniture was not removed, and the district continued to use it. They did not pay for it, and this suit was brought.

Upon the trial the facts were made to appear as stated herein. The plaintiff asked the judge to direct a verdict in favor of the plaintiff. He declined to do that, but instructed the jury that the director had no authority to make the contract he did, and that the "plaintiff is not entitled to recover at all, unless it is by virtue of the defendant having received the goods and used them, raising an implied acceptance." He charged the jury at length upon the question of ratification. It will not be necessary to pass upon all the assignments of error, nor will it be necessary to determine whether the director, by virtue of

his office, had authority to buy this furniture. It has been held that—

"It is well settled—at least, in this country—that where a person is employed for a corporation by one assuming to act in its behalf, and goes on and renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recognized as valid and binding, such corporation will be held to have sanctioned and ratified the contract. * * * Having availed itself of the services, and received the benefits, it is bound, in conscience, to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract." *Fister* v. *La Rue*, 15 Barb. 323.

In *Crane* v. *School District No. 6*, 61 Mich. 305, the plaintiff brought suit to recover pay for the full term of service contracted for,—20 weeks. He was discharged after teaching 10 weeks, and after having been paid $80 upon orders. The contract was not signed by the assessor, and the defendant offered to show that there was no resolution of record authorizing the making of this contract; that there was no consultation of the three officers, or any two of them, at any time, in relation to the hiring of the plaintiff; that they were not together when the contract was signed; and that there was no corporate action in relation to the execution of the contract, or the hiring of plaintiff. The court excluded the offered evidence, upon which ruling error was assigned. Justice Morse, in the opinion affirming the case, said:

"When it was admitted, without any dispute, that the plaintiff taught under this contract for 10 weeks, with the sanction and consent of the officers, and that orders were drawn by the proper officers for his pay as such teacher, and cashed by the assessor, who did not sign the contract, without any objection, it became entirely immaterial what the book of record showed, or whether there was any corporate action in hiring him, or authorizing the contract. The defendant must be held not only estopped by the action of its officers from questioning the validity of the contract, but treated as having fully ratified and confirmed it.

"School-district officers cannot be permitted by the law

to enter into a written contract with a teacher, none of them denying its validity for 10 weeks, or half the term, but recognizing it by making payments upon it, in which payments all join, and then, after the teacher, in the utmost good faith and reliance upon the contract, has taught that length of time, discharge him without cause, and plead in bar of his payment under the contract that they never met and consulted, nor took corporate action, in hiring him, nor made any record in a book of the execution of the contract. It appears very clearly in the case that a majority of the school board assented to this contract in the first place, as evidenced by their executing it. It was afterwards ratified by all three of them. It was not necessary that there should be a direct proceeding, with an express intent to ratify. 'It may be done indirectly, and by acts of recognition or acquiescence, or acts inconsistent with repudiation or disapproval.' See *Scott* v. *Methodist Church*, 50 Mich. 532. It was not necessary that these three officers should formally meet together, pass a resolution confirming the contract, and record it, in order to ratify the action of the moderator and director in hiring the plaintiff and executing the contract sued upon. Their action, in drawing and paying the orders without any demur or protest, was a sufficient recognition and approval of the contract."

The decision in that case ought to control this one. The district had authorized the purchase of these seats. The director gave the order for them. They were drawn from the railroad station by the director and the moderator. They were set up and put in the school-house by all three of the officers. The expense of setting them up, the freight bills, and the expense of bringing them from the railroad station, were paid; all three of the officers having knowledge of the fact and participating in the payment. The school district used the furniture for 15 months before any intimation was given to the assignor of the plaintiff of any purpose to rescind the contract. It is difficult to conceive of a stronger case of ratification and estoppel. The trial judge should have directed a verdict in favor of the plaintiff, as requested.

The judgment is reversed, and new trial ordered.

The other Justices concurred.