CHALMERS *v.* SCHOOL DISTRICT NO. 1, REYNOLDS TOWN-
SHIP.

Schools and School Districts—Contracts—Teacher's Salary.
  Two of the members of a district school board having agreed
    to employ a teacher, engaged plaintiff, who secured the sig-
    nature of two of them to a contract in writing. She was
    informed by the remaining member that he had erased his
    signature from the contract because a controversy existed
    between him and another candidate for the office, as to
    which was entitled to act. The opposing candidate finally
    secured the office and knew that plaintiff was performing
    the duties of teacher, expecting compensation; after two
    months he declined to pay plaintiff, who proceeded to per-
    form her part of the contract with the knowledge of the
    entire board. The objecting director sent his children to
    school to be taught by plaintiff; and neglected to protest
    against her continuing as teacher. The district provided
    fuel to warm the school. *Held,* that the plaintiff was en-
    titled to recover her salary. Act No. 146, Pub. Acts 1901,
    amending 2 Comp. Laws, § 4678. Ostrander and Stone,
    JJ., dissenting.

Error to Montcalm, Davis, J. Submitted November
15, 1911. (Docket No. 123.) Decided May 31, 1912.

Assumpsit by Hazel B. Chalmers against School Dis-
trict No. 1, Reynolds Township, for salary as a teacher.
Judgment for plaintiff. Defendant brings error. Af-
firmed.

*N. O. Griswold,* for appellant.

*J. Claude Youdan,* for appellee.

Moore, C. J. I cannot agree with the ·conclusion
reached by Justice Ostrander. When the contract was
signed, Miss Chalmers was informed by Mr. Losinger,
who had previously been director, and who then had the

school records, that as it had the signatures of the other two members of the board, it was not necessary to have his signature, and as there was a contention as to who was elected director, which contention was yet pending, that he thought it better, in view of the situation, to erase his name, which he had previously attached to the contract. At the school meeting held shortly before this, Mr. Losinger was a candidate for re-election. One Mr. Braman was also a candidate and received the larger number of votes, but Mr. Losinger claimed that some of those votes were illegal and declined to recognize the election of Mr. Braman, and retained the director's books until after the contract was made and Miss Chalmers had actually entered upon her work. Her testimony is that she did not at this time know who was the director. There is nothing to indicate that she did not enter upon this contract in the utmost good faith, supposing it to be a valid one.

After Mr. Braman was recognized as director, and after Miss Chalmers had taught for a considerable time, probably two months, as she asked for an order for two months' pay, he declined to give her an order and showed her a letter from the superintendent of public instruction. We do not know what was contained in that letter. Mr. Braman was sworn as a witness. He nowhere says he protested against Miss Chalmers continuing the school, nor did he notify her that if she continued to teach she would not be paid. He sent his children to her during the entire term of school. There is nothing in the record to indicate that any person in the district protested against Miss Chalmers continuing the school. All the members of the board knew she was teaching, claiming to have a valid contract. Two members of the board have all along been willing to recognize its validity. The third member of the board has profited by this contract to the extent of having his children taught through the entire term. The school district furnished the fuel without objection for warming the schoolhouse. There is testimony that Mr.

Braman furnished school supplies, though he denies that he did this during the term taught by the plaintiff.

In *Crane* v. *School District*, 61 Mich. 299 (28 N. W. 105), it was said:

"It is not imperative that a contract of this kind shall be signed by all three of the officers. If, at a proper meeting, a majority should vote to employ a teacher, and contract with him, the other officer could not prevent the consummation of their action by refusing to sign the contract.

"There might be other reasons, not interfering with the validity of such a contract, why one of the officers did not sign it. A contract signed by a majority of the board, therefore, is presumptively valid on its face, and the circuit judge did not err in admitting it in evidence. * * *

"It appears very clearly in this case that a majority of the school board assented to this contract in the first place, as evidenced by their executing it. It was afterwards ratified by all three of them. It was not necessary that there should be a direct proceeding with an express intent to ratify. 'It may be done indirectly, and by acts of recognition or acquiescence, or acts inconsistent with repudiation or disapproval.' See *Scott* v. *Methodist Church of Jackson*, 50 Mich. 532 [15 N. W. 891], and cases there cited."

In *Holloway* v. *School District*, 62 Mich. 153 (28 N. W. 764), the court said:

"It is the business of school districts to keep up public schools, and it is the duty of the officers to provide teachers, and to make contracts with them. It is their duty to know under what conditions a teacher, whom they know to be teaching, claims to act. Plaintiff had a right to suppose his contract was a valid one when it was signed by a sufficient number of officers and he was, with the personal knowledge of the whole board, permitted, and apparently encouraged, to proceed. A contract valid on its face, actually carried out in full with the acquiescence of all concerned, cannot be subsequently repudiated. The board cannot, by abstaining from holding meetings, and from doing its duty, set up its own wrong in defense of an honest claim. This case is within the principle of the recent case of *Crane* v. *Bennington School District*, 61 Mich. 299 [28 N. W. 105], where questions quite analogous were

raised. We cannot but regret that any of our schools should be managed in the spirit shown on this record."

See *Farrell* v. *School District*, 98 Mich. 43 (56 N. W. 1053); *Jones* v. *School District*, 110 Mich. 363 (68 N. W. 222).

The plaintiff entered upon her work under a written contract valid upon its face. She has performed fully the terms of her contract. The school district has had the benefit of her work, and should now pay for it.

The judgment is affirmed.

STEERE, MCALVAY, BROOKE, BLAIR, and BIRD, JJ., concurred with MOORE, C. J.

OSTRANDER, J. (*dissenting*). Plaintiff declared upon an express contract, by the terms of which, it is alleged, she was employed to teach the district school for four months, beginning September 6, 1909, at the rate of $42 per month. She alleges performance of the contract on her part, demand for $168 salary, and the refusal of defendant to pay her. Under the plea of the general issue, defendant gave notice that it would prove that it never made any contract whatever as required by law with the plaintiff. That plaintiff taught the school for the term is admitted. It appears that at the school meeting held in the district in July, 1909, Thomas Braman appeared to have been elected director of the school district; that he immediately qualified for the office; but that one Joseph Losinger, who was then director and a candidate for re-election, claimed, at least, that Braman had not been elected. It seems that *quo warranto* proceedings were instituted in August, 1909, by Braman against Losinger. It appears to be conceded that Braman was duly elected and, later in the year, having obtained possession of the books, acted as director. The other officers of the school district were Randall Fry and M. E. Alverson. Alverson was the moderator, and Fry was the treasurer. Losinger, Alverson, and Fry, probably early in August, con-

sulted together with respect to hiring a teacher for the district for the winter term. Plaintiff had made application for the school, and these gentlemen went to her residence to see her, and, although she was absent, they learned from her mother the terms upon which she would teach. It was thought best to accept the terms, and subsequently Mr. Losinger drafted a teacher's contract. The only evidence of any action by the board appears upon a sheet of paper, found in the director's record book, which at the time was in the custody of Losinger, and is as follows:

"The meeting of district board of district No. 1, of Reynolds, held on the sixth day of August, 1909; present, R. Fry and M. E. Alverson, who decided to hire Hazel Chalmers to teach four months school."

It is not signed nor attested by any one. The contract drawn by Losinger is in the usual form, dated August 19, 1909, and signed by the plaintiff as teacher and by R. Fry and M. E. Alverson, district board. Losinger at first signed it and took it to the plaintiff for her signature, but before she signed it, and to her knowledge, he erased his name, telling her that there was some contention as to who was director, and that it was thought best that his name did not appear, inasmuch as it was not necessary. Plaintiff saw Alverson's name signed to the contract and took it for granted that he had signed it, and plaintiff testified that she had a conversation with Mr. Alverson afterwards, who said to her that he was away from home at the time the contract was brought for his signature, and he authorized his wife to sign it when it did come, and she signed it. Plaintiff knew there was a contention over the office of director, and learned at the end of the first month that she could not get an order for her pay. The director, Braman, testified that as soon as the books came into his possession he had a conversation with the plaintiff, showing her a letter from the superintendent of public instruction, which she read. The letter was not produced at the trial, and we have no knowledge of what it contained;

but, according to the witness, all he did was to hand her the letter and ask her if she understood the circumstances, and she said she did. He showed it to her, he says, as furnishing a reason why he took the stand that he did, and plaintiff told him, "I think you are wrong," and went her way. All of the members of the board knew that plaintiff was teaching the school, claiming to have a contract with the district board, and during the term the director, Braman, sent his children to the school. There is disputed testimony tending to prove that he furnished some school supplies for plaintiff's use.

The court instructed the jury that the plaintiff was entitled to recover and directed a verdict for the contract price of the service, with interest. Some of the assignments of error are based upon rulings admitting testimony, including the ruling which admitted the contract in evidence; but the controlling question relates to the validity of the contract, which, as plaintiff knew, was signed by but two members of the board, and which she alleges in her declaration to have been made by a majority of the district board

The statute (Act No. 146, Pub. Acts 1901, § 1 ) provides:

"The district board shall hire and contract with such duly qualified teachers as may be required; and all contracts shall be in writing and signed by a majority of the board in behalf of the district. Said contracts shall specify the wages agreed upon," etc.

So far as it is important here, this section of the statute reads as it did in the law of 1881 (chap. 3, § 13, Act No. 164, Pub. Acts 1881 [2 Comp. Laws, § 4678]), and it was held, in *Hazen* v. *Lerche*, 47 Mich. 626 (11 N. W. 413), in a mandamus proceeding to compel the assessor of a school district to pay an order for a teacher's salary, that the fact that the relator was hired by two members of the school board, without calling any meeting of the board and without consultation with the respondent or his knowledge, was conclusive of the right of relator to the writ. The decision turns in part upon section 6 of the statute (chap.

3, Act No. 164, Pub. Acts 1881), which provides that no
act authorized to be done by the district board shall be
valid unless voted at a meeting of the board. In the case
at bar, also, it appears that Braman, the director, was not
consulted about hiring the plaintiff and attended no meet-
ing at which the subject was discussed. In *Crane* v.
*School District*, 61 Mich. 299 (28 N. W. 105), *Hazen* v.
*Lerche* is distinguished. The action was for teacher's
wages; the declaration being upon a contract signed by
two members of the board. After teaching 10 weeks, the
contract being for 20 weeks, the plaintiff teacher was dis-
charged. The defense was based upon *Hazen* v. *Lerche.*
The defendant offered to show that there was no resolu-
tion of record in the book containing the proceedings of
the district board authorizing the making of the contract
for the hiring of the plaintiff; that there was no consul-
tation of the three officers, or any two of them, at any
time, in relation to hiring of plaintiff; and that they were
not together when the contract was signed. All of this
testimony the trial court excluded and admitted the con-
tract in evidence. But it appeared that two orders had
been drawn by the director upon the assessor and counter-
signed by the moderator, which were paid by the assessor.
It was held that the acts of the district officers in drawing
and paying the orders without protest was a sufficient
recognition and approval of the contract. In *Holloway*
v. *School District*, 62 Mich. 153 (28 N. W. 764), which
was an action for a balance of teacher's wages, the plain-
tiff showed a contract entered in a book kept by the dis-
trict, signed by the director and assessor, but not by the
moderator, and the two officers who signed did not sign at
the same time. It appeared that the teacher had taught
the full time provided by the contract, and that the officer
who did not sign it knew that plaintiff was teaching, and
not only made no objection, but concurred in paying a
portion of the wages. It was held that the contract was
valid on its face, that plaintiff had the right to suppose it
was valid when signed by a sufficient number of officers,

and he was, with the personal knowledge of the whole board, permitted to perform the contract on his part. It was said:

"A contract valid on its face, actually carried out in full with the acquiescence of all concerned, cannot be subsequently repudiated. The board cannot, by abstaining from holding meetings, and from doing its duty, set up its own wrong in defense of an honest claim."

In *Cowley* v. *School District*, 130 Mich. 634 (90 N. W. 680), there was no performance of his contract by the teacher and no ratification thereof by official action of the board. As in *Hazen* v. *Lerche*, the plaintiff relied, and was obliged to do so, upon the validity of the contract.

In the case at bar, we have a contract which on its face is presumptively valid, and no error was committed in receiving it in evidence. If the *de facto* director had joined in making it or in the action of the district board authorizing it, we should be required to determine whether such action was lawful. But he expressly refused to act, the *de jure* director was excluded, and no official action sufficient to bind the school district in the first instance was taken. The question, then, is whether the contract was ratified and became binding upon the district by good-faith performance on the part of the plaintiff and acquiescence on the part of the district and its officers. It cannot be said that plaintiff had no notice of the infirmity of the contract. Although she testified that she was told it was all right, she knew that but two officers of the district professed to have taken any official action in the premises. She knew later, and soon after beginning her work, that the director would not draw orders for her pay. She assumed to decide for herself that the district was bound. No official action of the director in ratification of the contract is shown. At most, he personally took advantage of the situation and sent his children to the school. Undoubtedly, such a corporation as the defendant may, indirectly, by acts of recognition or acqui-

170 MICH.—17.

escence, or by acts inconsistent with repudiation and disapproval, ratify a contract irregularly made in its behalf. *Scott* v. *Methodist Church of Jackson*, 50 Mich. 528, 532 (15 N. W. 891); *Crane* v. *School District, supra.* But the open declaration of the director is consistent only with disapproval and repudiation, and it cannot be said that the district is nevertheless bound.

The case seems a hard one, but we feel obliged to reverse the judgment, granting a new trial if plaintiff shall be thereto advised.

STONE, J., concurred with OSTRANDER, J.