REED *v.* McCREADY.

1. APPEAL AND ERROR — QUESTIONS REVIEWABLE—CAPIAS—AFFIDAVIT.

The sufficiency of an affidavit for *capias ad respondendum* cannot be raised on error after pleading and trial on the merits.

2. SAME—SUFFICIENCY OF AFFIDAVIT FOR ARREST.

Upon a record showing that the affiant, who secured defendant's arrest on capias, knew from admissions of defendant a part of the facts sworn to, and that other jurisdictional facts

appeared by another affidavit which was not included in the record, it could not be held that an abuse of process was made to appear.

3. PRINCIPAL AND AGENT—PUBLIC POLICY—CONVERSION.

In trover for the conversion of a promissory note that defendant claimed plaintiff held in trust to be used in satisfaction of an existing and prior lien upon premises for which the note was part consideration, that the note was worthless in the hands of the payee, having no value until transferred to a holder in good faith, and that defendant was authorized to negotiate it in order to secure to himself commissions owing to him from plaintiff, defendant could not defend against plaintiff's claim on the theory that to negotiate the notes was a breach of trust on plaintiff's part or that it was against public policy to permit a recovery for the money obtained thereon.

4. SAME—TITLE—BILLS AND NOTES—INDORSEMENT.

The court did not err in charging the jury as to defendant's claim that the note was not plaintiff's, but belonged to a partnership of which he was a member, that the indorsement of the instrument in blank and the delivery to a third person is *prima facie* evidence of the transfer of title, but the question of ownership should be determined from the evidence in the case.

5. SAME—PRESUMPTIONS—EVIDENCE.

Such presumption might properly be rebutted by showing that title remained in the indorser.

6. SAME—INSTRUCTIONS TO JURY—TRIAL.

Nor did the trial court err in refusing defendant's request to charge the jury that defendant's uncontradicted evidence concerning a conversation with one of the firm was conclusive; there being a sharp conflict in the testimony of defendant with that of other witnesses, the jury was not bound to accept as true any particular part of defendant's testimony.

7. SAME—CHARGE.

The court did not err in charging the jury that if the note belonged to plaintiff, who transferred it to the firm of which he was a member, for collection, he was entitled to recover; if the note was partnership property plaintiff could not recover; that if the note was in defendant's hands to discount and apply the proceeds on his claim against the copartnership, his possession of the note and the disposition thereof was lawful.

Error to Kent; Perkins, J. Submitted April 11, 1912. (Docket No. 111.) Decided May 31, 1912. Rehearing denied July 22, 1912.

Trover and case by Ernest C. Reed against LaMott R. McCready for the conversion of a promissory note. Judgment for plaintiff. Defendant brings error. Affirmed.

*E. A. Maher*, for appellant.

*Rodgers & Rodgers*, for appellee.

STONE, J. The statement of facts in this case does not comply with the requirements of rule 40 because the same is not distinct from argument. It appears that the subject-matter of the suit was a promissory note made by one Edward B. Downing bearing date May 9, 1908, for the sum of $642.40, payable to the plaintiff or order, and due on or before three years from date, with interest from date until paid at the rate of 6 per cent. per annum. This note was No. 3 of a series of three vendor's lien notes given by Downing to the plaintiff as part of the purchase price of some Texas land which had been deeded to Downing by the plaintiff.

The defendant had been in the employ of a copartnership known as the Reed-Allen Realty Company of Chicago, Ill., composed of the plaintiff, Oscar O. Reed, and Alexander C. Allen. The note in question was delivered to the defendant at Chicago on September 16, 1908, by the Reed-Allen Realty Company, and defendant signed a receipt therefor in the words and figures following:

"CHICAGO, SEPTEMBER, 16, 1908.
"Received of Reed-Allen Realty Company one vendor's lien note No. 3, dated May 9, 1908, for $642.40 due on or before three years after date, with six per cent. interest signed by E. B. Downing of Grand Rapids, Michigan.
"L. R. McCREADY."

It will be noted that the receipt did not state the object

and purpose for which the note had been delivered to the defendant.

The defendant sold the note to one Merrill November 11, 1908, for $607, and retained the proceeds, claiming a right to do so by virtue of his relations and dealings with said copartnership. It is the claim of the plaintiff that the defendant was given authority by the said copartnership in writing to discount this note not to exceed 3 per cent. of the face value, on which writing the discount was figured at $34.40, leaving the net price of the note $607. It is the further claim of the plaintiff that the note was to be sold and cashed by the defendant for the said copartnership, and the proceeds thereof returned to the copartnership. The note at the time it was delivered to the defendant had been indorsed by the plaintiff and was at the time taken from a note box containing papers, which box was in the vault in charge of said firm.

This is an action commenced by *capias ad respondendum* in trover and case for the alleged unlawful conversion of the proceeds of the promissory note after demand made. To obtain an order that the defendant be held to bail, the plaintiff made an affidavit which was attached to the writ. It was the claim of the defendant upon the trial that the affidavit was untrue in many essential particulars, and the defendant introduced the affidavit in evidence upon the trial. The writ of capias was also offered in evidence by defendant, but was excluded by the court, to which ruling defendant excepted, and error is assigned upon the ruling. It appears that there was at least one other affidavit attached to the writ which is not in the record.

An important and much controverted question upon the trial was the ownership of the note delivered to the defendant. It was claimed by the defendant that the note was the property of said copartnership, that the note was delivered to the defendant by such copartnership to enable him to obtain payment of an admitted indebtedness to him from the copartnership, and that he could not be held liable

for the proceeds of the note in any action unless a balance should be established against him in favor of the copartnership upon an accounting between them.

The defendant further claimed that at the time he received the note, and when he disposed of it, it was utterly without value in the hands of the copartnership or the plaintiff except as it might be fraudulently disposed of to a good-faith purchaser; that the disposition made of the note by the copartnership constituted a fraudulent breach of trust with respect to Downing, the maker of the note, because of certain vendor's lien notes that had been given by the plaintiff to one Frazier, from whom plaintiff purchased the land he conveyed to Downing which were still outstanding—hence that the transaction could not afford a basis for an action to recover damages either for a disposal of the note or the retention of its proceeds.

The testimony upon the trial of the case took a wide range, covering grounds relating to the ownership of the note, the agency of the firm as to the plaintiff, and the manner of conducting the business of the copartnership and its members, the dealings of the defendant with the copartnership, and the condition of the accounts between defendant and the firm. There are 70 exhibits, and a record of 228 pages is presented. The trial resulted in a verdict and judgment for the plaintiff.

After the denial of a motion for a new trial based on many grounds, involving the refusal of requests to charge and the charge of the court, the defendant has brought the case here by writ of error, assigning many errors in the rulings on the introduction of evidence, and the refusal of the motion for a new trial. Counsel for appellant has discussed the many questions raised under four heads, and we shall consider them in the order presented.

(1) It is urged by defendant that upon grounds of public policy the plaintiff had no right to submit his case to the jury for two reasons: (a) Because jurisdiction of the defendant's person was obtained in an unlawful manner. (b) Because the delivery of the note in question to the de-

fendant, for the purpose of having the same sold or discounted, constituted a fraudulent breach of trust on the part of the Reed-Allen Realty Company as to the maker of the note, Edward B. Downing.

(*a*) The defendant claims that from the evidence on the part of the plaintiff it appears that the affidavit made by the plaintiff for the purpose of obtaining an order that the defendant be held to bail was untrue in every essential particular which authorized the making of such order; that to warrant the making of an order that the defendant be held to bail it was necessary that the affidavit should show that the defendant received the note under circumstances that made him liable to the plaintiff for its proceeds when disposed of by him, and that such affidavit could not be made upon information and belief. It is urged that because the evidence upon the part of the plaintiff showed that the plaintiff was not present and could not have had personal knowledge relative to the circumstances of the delivery of the note to the defendant, or the terms or conditions upon which the note was delivered to him, that the affidavit was untrue as a matter of fact.

A perusal of the affidavit discloses that the plaintiff had seen and talked with the defendant concerning the facts and circumstances set forth, and that the same had been admitted by defendant to deponent, with the exception of the sale of said promissory note to Merrill, which latter fact we gather was supplied by another affidavit. We are not prepared to say after reading this record that there was no evidence in support of the statement contained in the affidavit. It should be borne in mind that no issue of any kind was framed or presented to the court or jury relating to the affidavit, only as its contents were embraced in the declaration and were involved in the trial of the merits of the case. The affidavit was introduced in evidence by the defendant for the purpose of furnishing evidence as an admission of the plaintiff, and the affidavit does not purport to set out the whole case. There being another affidavit which does not appear in this record, it

is not possible to determine from the record how much of plaintiff's affidavit was essential to support the writ of capias.   This court has held that the sufficiency of the affidavit cannot be raised by writ of error after pleading and trial on the merits.   *Wiest* v. *Luyendyk*, 73 Mich. 661 (41 N. W. 839); *Graham* v. *Cass Circuit Judge*, 108 Mich. 425 (66 N. W. 348).   We cannot say from this record that there was here an abuse of process as is claimed by defendant, nor that public policy has been infringed upon as is claimed.   We do not think that the court erred in refusing to admit in evidence the writ, as no question was raised that the writ had not performed its office and was not in due form.

(*b*) Upon this point the defendant claims that the act of the Realty Company in directing a sale of the note was flagrantly fraudulent and a breach of the trust upon which the plaintiff or the company received the note; that that trust was to use the note to satisfy an incumbrance against the land conveyed to Downing, which was created by vendor's lien notes given by the plaintiff to Frazier; and that the note was utterly worthless in the hands of the Realty Company or any of its members unless incumbrances amounting to three times the amount of the note were satisfied and discharged.   The defendant's contention seems to be that this note was held in trust by plaintiff or his company to satisfy the Frazier note against this same property.

We do not so understand the record.   We find no agreement anywhere that this note or its proceeds would be turned over to Frazier to satisfy his notes.   In fact, it would seem that the Frazier notes were before the trial paid in full and the lien discharged.   It should be borne in mind that the claim of the plaintiff was that the money to be realized on this note by the defendant was to be remitted to the plaintiff or the copartnership.   If this had been done, there was nothing to prevent the proceeds being used by plaintiff to satisfy the Frazier notes the same as though they had waited until maturity and col-

lected it from Downing. Of course, if the note was turned
out to defendant to pay him his commission, the proceeds
could not be used to pay the Frazier notes, but the jury
must have found that such was not the fact. Again the
record shows distinctly that the defendant sold this note
for money. And it would be a strange doctrine of public
policy that would permit a defendant to sell a piece of
paper belonging to plaintiff, even had plaintiff violated a
trust, and then permit the defendant to appropriate the
proceeds. Again the record shows that the original deal
with Downing was made by defendant who had full
knowledge of the Frazier liens. The record shows that
the Frazier notes were paid before maturity. We are un-
able to see any merit in the claim of the defendant that
upon the grounds of public policy the plaintiff had no
right to the submission of his case to the jury.

2. The next proposition presented by defendant is that
there was no competent evidence that the plaintiff was the
owner of the note in question at the time it was delivered
to, and disposed of by, the defendant. We cannot say
from this record that there was no competent evidence
that the plaintiff was the owner of the note in question at
the time stated. It appeared that the note was given to
the plaintiff with others for part of the purchase price of
land conveyed to Downing by the plaintiff, that the notes
were payable to the plaintiff or order, and the testimony
of Oscar O. Reed, one of the partners, was quite full and
complete upon the question of the title to the note. It is
true that the note in question was indorsed by the plain-
tiff and may be said to have been found in the possession
of the copartnership of which he was a member at the
time of its delivery to the defendant. Presumptively it
may be said it had become the property of the copartner-
ship. Much stress is laid upon the fact that neither the
plaintiff nor the other partner, Allen, testified in the case,
and that the books of the copartnership were not produced
upon the trial. It is only fair to say that there had been
no notice served upon the plaintiff or his attorneys to pro-

duce the books of the copartnership. We shall not quote the testimony contained in the record with reference to the ownership of this note. In our opinion there was enough to carry the case to the jury, and we think the rights of the defendant upon this subject were properly guarded by the court in its charge wherein it said:

"*Secondly*, the question arises as to the ownership of this note at the time it was delivered to the defendant. The plaintiff claims that it belonged to him; the defendant claims that it belonged to the Reed-Allen Realty Company. The indorsement of a note in blank and the delivery thereof to a third person as in this case is *prima facie* evidence of the transfer of title and would justify a verdict to that effect, but it is not conclusive. Notwithstanding an indorsement and delivery, the question of ownership and title still remain questions of fact to be determined under all the evidence in the case. In determining this question of title and ownership, you will consider all of the evidence in the case."

We think that this statement of the law is correct. Our decisions are uniform that the indorsement and delivery of a negotiable instrument to another is presumptive evidence of his ownership. But this presumption is not conclusive. It may be rebutted by showing that the title is still in the original maker. *Hovey* v. *Sebring*, 24 Mich. 232 (9 Am. Rep. 122); *Barnes* v. *Peet*, 77 Mich. 391 (43 N. W. 1025); *Hogan* v. *Dreifus*, 121 Mich. 453 (80 N. W. 254).

This question was urged before the court in the motion for a new trial, and in its opinion denying the motion the court distinctly covers the question in the following language:

"For the reasons stated, also, I do not think any error was committed in submitting to the jury the question as to the terms and conditions upon which the plaintiff received this note. As between himself and the Reed-Allen Realty Company, the plaintiff had a right to show as a fact that he was the owner of the note. The circumstances, however strong they may have been, were for the consideration of the jury under proper instructions. * * *

I do not understand that if, as a fact, this note and the proceeds thereof belong to the plaintiff, the Reed-Allen Realty Company could defeat his right thereto by failing to inform the defendant of its agency."

There was a sharp conflict between the testimony of the plaintiff's witnesses and that of the defendant upon nearly every material matter in issue. Defendant's twenty-seventh request to charge was in the following language: ·

"It appears from the undisputed evidence in the case that, after the delivery of the note in question to the defendant and before he had disposed of the same, he had a conversation with Alexander C. Allen of the Reed-Allen Realty Company in which he asked for payment of commissions due him from said company, and that Allen said to the defendant in substance that if he got any money he would have to get it from that note. The jury are therefore instructed that the plaintiff cannot recover against the defendant in this cause by reason of anything done by the defendant with or on account of said note."

This request was refused, and its refusal is made one of the grounds for the motion for a new trial. In his reasons for refusing the motion the circuit judge said:

"Whether the statement of Alexander C. Allen was made or not, as specified in the twenty-seventh request, was for the jury to determine, and the request should not have been submitted as containing the undisputed fact, as the request implies."

In a case where there is a sharp conflict in the testimony of witnesses upon many material points, we do not think it can be said that the jury are bound, as matter of law, to accept as true any particular part of the testimony of a witness. The whole subject was fully submitted to the jury in the charge of the court, and we find no error in this branch of the case.

3. The next point urged by defendant for the reversal of the judgment is that the undisputed evidence in the case showed that there was an open and unsettled account between the defendant and the Reed-Allen Realty Company at the time the defendant received the note in ques-

tion, and that this account was still open and unsettled at the time of the trial. And it is claimed that for this reason the plaintiff should not have recovered. This proposition might be answered by saying that the jury have found as matter of fact that the note was the property of the plaintiff. We think that the question of an accounting was by the charge of the court eliminated from the case. The evidence of commissions claimed to be due defendant was introduced by defendant to support his claim that the note was given to him that he might reimburse himself for money due him from the company. Upon this branch of the case the trial court charged the jury as follows:

" If you find that the plaintiff, Ernest C. Reed, was the owner of this note and that it was turned over to the Reed-Allen Realty Company for collection only, as the plaintiff claims, and that the arrangement with the defendant was, as the plaintiff claims, namely, that the defendant was to take the note, discount it, and account for the proceeds to the Reed-Allen Realty Company, the plaintiff can recover the amount you may find the defendant received for the note together with interest at the rate of 5 per cent. from November 11, 1908. The same would be true, and I so instruct you, if it was turned over to the defendant without any instruction as to what should be done with the proceeds, if you find that the plaintiff was the owner of the note.

"On the other hand, should you find *first* that the note was partnership property as the defendant claims, there can be no recovery. *Second*, should you find that the note was Ernest C. Reed's as a matter of fact, but that the agreement between the Reed-Allen Realty Company and the defendant was that the defendant should discount the note and apply the proceeds upon any commission then due him, as the defendant claims, then the plaintiff cannot recover.

"This question of commissions has been brought into this case incidentally and to show that, if the claims of the defendant are true, there is a controversy between the defendant and the Reed-Allen Realty Company as to the amount of those commissions, and that controversy should be settled between the parties in interest and not between the defendant and a third party.

" If this note was turned over to the defendant, as the defendant claims, to discount and apply the proceeds upon any amount that might be due him from the Reed-Allen Realty Company, his possession of the note was lawful. The contract between him and the Reed-Allen Company in relation to its disposition was proper and right. The question of fraud would be eliminated from the case. His conversion of the note is a matter which rests between him and the Reed-Allen Realty Company. The determination of the balance due one way or the other is a matter that must be determined in a suit between the real parties in interest and not between the defendant and a third party. So you can see that if the defendant's claims are true, the questions of fraud and conversion are eliminated from the case, and no recovery can be had because this is a fraud case. So, should you reach this point in your deliberations, there would be no necessity on your part to determine the amount that may be due the defendant for commissions and set off that amount against the amount he may have collected upon this note. That would be a matter that must be determined in some other case, should you find the claims of the defendant to be true."

We think this portion of the charge fully as favorable to the defendant as could be reasonably asked. We have examined all the other assignments of error embraced in this branch of defendant's argument and are of opinion that there is no merit in his claim.

Lastly, it is urged by defendant that the court below should have set aside the verdict and judgment as being against the law and evidence, upon the ground that the verdict was clearly against the weight of the evidence. We have in a measure covered this branch of the case in what we have already said. As we had occasion to say recently in the case of *Gardiner* v. *Courtright*, 165 Mich. 54 (130 N. W. 322), the rule is well settled that this court will only reverse a case upon the question of the weight of the evidence when the verdict is against the overwhelming weight of the evidence. The verdict must be clearly against the great weight of the evidence to require this court to overrule the decision of the circuit

judge refusing a new trial. This rule has been repeatedly stated by us. See other cases there cited.

We are of opinion that the circuit judge did not abuse his discretion in refusing a new trial upon the ground that the verdict was against the weight of the evidence.

The other assignments of error not here specifically referred to have all been examined by us, and we are of opinion that there is no reversible error in the record, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.