DARLING *v.* GRAND RAPIDS, GRAND HAVEN & MUSKEGON
RAILWAY CO.

1. MASTER AND SERVANT — WEIGHT OF EVIDENCE — NEGLIGENCE —
COMPARATIVE DEGREES.

Evidence tending to show that plaintiff was a motorman
of an interurban car which was ordered to follow a car
upon the same route and which, obeying the rule of the
defendant company, left the station three minutes behind
the other car or section; that there was some fog which
obscured the view of the motorman; that the car in ad-
vance ran past a station to which it was compelled to
return to discharge passengers and that it stopped an
unusual or unreasonable length of time; that plaintiff
was unable to see the car in time to avoid a collision, with
conflicting testimony relative to the speed of the second
section: *held*, to sustain a verdict for the plaintiff upon
motion for a new trial based upon the contention that
the verdict was contrary to the overwhelming weight of
the evidence.

2. EVIDENCE — SURROUNDING CIRCUMSTANCES — NEGLIGENCE — MAS-
TER AND SERVANT.

Testimony relating to the speed of the two sections imme-
diately prior to the collision, the length of delay of the
first section at the crossing because it was compelled to
back up, and as to delay in failing to leave the station
after so doing, also, as to failure to throw out a fusee
upon the track, the speed of the second car, and other
evidence relating to the physical facts connected with the
accident was material and relevant: the court did not
err in the reception of the same and in submitting the
case to the jury.

3. SAME—APPEAL AND ERROR.

The Supreme Court will only reverse a judgment in re-
viewing the denial of a motion for a new trial when the
verdict is clearly against the great weight of the evidence.

4. SAME—EXPERT TESTIMONY—WITNESSES—CONCLUSIONS.

Testimony of two physicians, in a personal injury action,
called to examine plaintiff for the purpose of giving evi-
dence at the trial, that certain motions of the limb were

very painful to the man and were limited and indicated an apparent fracture was not objectionable on the ground that the testimony was incompetent as an improper conclusion.

5. SAME—HYPOTHETICAL QUESTION.
There was no error in declining to strike out the answer of a medical expert, in response to a hypothetical question whether plaintiff's injury might have resulted from a collision in which the plaintiff was thrown some twenty feet to the ground, that the injuries to plaintiff's hip and spine, described in the question, could have resulted from the accident.

6. MASTER AND SERVANT — COMPARATIVE NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—STREET RAILWAYS—INTERURBAN LINES.
Held, also, that there was evidence tending to establish plaintiff's theory that his negligence was less in degree than that of the defendant's employees in charge of the preceding car. (Act No. 104, Pub. Acts 1909.)

Error to Kent; Perkins, J. Submitted January 21, 1914. (Docket No. 96.) Decided March 18, 1915.

Case by Willis L. Darling against the Grand Rapids, Grand Haven & Muskegon Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Carroll, Kirwin & Hollway,* for appellant.

*Smedley, Linsey & Lillie,* for appellee.

McALVAY, J. Plaintiff, who was in the employment of defendant, brought this action to recover damages for personal injuries claimed to have been received by him on the night of September 10, 1911, at Thompson's Crossing, in Ottawa county, a point on the line of defendant's railway, in a rear-end collision of two cars on the rear one of which he was acting as motorman. He recovered a judgment in the case, which defendant has brought to this court for review upon errors assigned.

The following are the material facts in the case necessary to be stated: Defendant operates an electric railway, the main line of which extends from Grand Rapids to Muskegon, with a branch at a point on the main line called Grand Haven Junction. Cars on the Grand Haven branch are operated back and forth from Grand Haven Junction to Grand Haven, and meet all cars on the main line at the junction, where passengers going either way are transferred. The dispatcher's office is at Fruitport, from which place orders to the train crews on each car are transmitted by telephone through station agents. Grand Haven Junction is a regular registering point where all car crews are required to sign their names and time of arrival and departure of cars. They get their orders at that point direct by calling up the dispatcher. On a busy day an operator is kept at the junction, and orders from the dispatcher are given to the car crews through him.

Plaintiff was an experienced motorman, and had been employed as such for about seven years before this accident, September 10, 1911. On this date he was working in that capacity on a freight car, and made his regular run from Grand Haven to Grand Rapids, arriving at the latter place between 6 and 7 o'clock in the morning. Shortly after he arrived home he was notified by defendant's agent that he would be required to "triple" train 38 from Fruitport, which was a point beyond Grand Haven Junction, to Grand Rapids, leaving Fruitport at 6:10 p. m. In pursuance of this order he left Grand Rapids on the 5:00 p. m. interurban car for Fruitport, and arrived there about 6:18, and went to the dispatcher's office for orders, which he received to run from Fruitport to Grand Haven Junction. The crew, plaintiff acting as motorman, took this car from Fruitport to the junction, and arrived there at about 7:15 p. m.

184 Mich.—39.

A car then arrived over the Grand Haven branch loaded with passengers, which was to be run from the junction to Grand Rapids. The regular car from Muskegon also arrived there in charge of Harvey Town, motorman, and A. E. Munyon, conductor, which was made the first car, or section, of train No. 38.

Plaintiff was assigned as motorman to car No. 2 above described, which came from Grand Haven, with one William Smith, as conductor. This car was to run as second section of train No. 38. These cars were placed in position to make the run to the city of Grand Rapids, and the motormen received their running orders in writing from the dispatcher at the junction through the operator. When he received his running orders plaintiff called the attention of the operator to a mistake in the number of his car, which was given in the order as 15, instead of 2, and told the operator to notify the dispatcher. This was done, and the mistake was at once corrected.

The first section of train 38 then left the station between 7:19 and 7:20, and plaintiff took the orders in duplicate, gave one to the conductor, and read the order to him, saying: "There is no meet order on it." He then went to the front end of the car, took off the green light which was there, put it out, got onto the cab of his car, put down the lantern, reached out of the window and took in the green flag. At that time the conductor gave him two bells, and, as the three minutes' time required by rule in which the second section of a train must delay before leaving after the first section, had not expired, he waited. The trainmaster of the road, who was there leaving on another car from Muskegon, said: "All right, boys; go ahead when your time is up."

Plaintiff started the car when the three minutes had expired. Johnson's Crossing is the first public crossing east of the junction and the only one between

the junction and Thompson's Crossing. The distance from the junction to Thompson's Crossing is 1.81 miles. We do not find the exact distance from the junction to Johnson's Crossing stated, but the testimony indicates the distance to be about one-half mile.

The first section of train 38 carried about 55 passengers, and after it left the junction it ran at full speed, 40 or 45 miles an hour, until the conductor gave the motorman the bell to stop at Thompson's Crossing, where a passenger was to alight. Between these two points on the road the weather was foggy and sometimes in clouds quite dense. The car overran this crossing, and it was necessary to back up to the platform, when the passenger left the car. Here is where this car stood when the rear section ran into it.

Between the junction and Thompson's Crossing the track is straight and downgrade. This grade is sharper after going east from Johnson's Crossing. The second section, after it left the junction until it reached Johnson's Crossing, ran at full speed of from 40 to 45 miles an hour. At this crossing the motorman of the second section testifies he turned off the current, as required by rule, and allowed the car to coast down the grade. The speed became less, and a short distance beyond the car was going about 40 miles an hour.

When about halfway to Thompson's Crossing, because the fog became heavier, the motorman tested the air brakes and reduced the speed. Before reaching the whistle post for Thompson's Crossing the motorman applied the air again and slackened speed. The proper whistle was sounded at the whistle post. No bell from the conductor or other notice to stop at this crossing was given the motorman of the second section. No torpedo was upon the track and no fusee had been dropped by the first section. Suddenly, not to exceed 100 feet distant ahead, plaintiff saw the tail

light of the first section. Plaintiff at once applied the air brakes, and, seeing that a collision was inevitable, started for and reached the door of his car when the collision occurred. He was thrown from the car 20 feet, striking on the ground, which rendered him unconscious for considerable time.

The foregoing is a brief outline of the facts in this case up to the instant of the collision. In order to intelligently understand the dispute between the parties to this litigation, it is necessary to state the claims of each as to the causes which resulted in the injury to plaintiff, for which he has brought suit.

On the part of plaintiff the claim is that he was operating his car with due care and without negligence; that the presence of the first section of this train at that time at Thompson's Crossing was caused by the negligence of Conductor Munyon, who, after his car had run past this station, backed it up for a passenger to alight, and unnecessarily and negligently held it while he talked with, and made change for, a passenger until more than the three minutes' running time between the sections had elapsed, and neglected to give his motorman the starting signal at the proper time. Plaintiff also claims that, if he was in any respect negligent, such negligence was of a lesser degree than the negligence of defendant, its officers, agents, and employees.

On the part of defendant it is claimed that plaintiff started his car from the junction in less than three minutes from the time the first car started; that plaintiff ran his car at a high and excessive rate of speed; that plaintiff should have so operated his car that he could have stopped it at all times within the range of his vision; and that the negligence of plaintiff was at least equal to the negligence of Conductor Munyon.

This case is brought under Act No. 104, Pub. Acts 1909, of this State, entitled "An act to prescribe the

liability of common carrier railroad companies to their employees." The contention of plaintiff is that by reason of this statute defendant company is liable for the negligence of Conductor Munyon, who was in charge of the first section of train 38 on the night in question. The declaration consists of three counts, in each of which is charged the duty of defendant in the premises and the neglect of such duty by its agents and servants. Such duties and negligence are briefly stated in plaintiff's brief, as follows:

"(1) It was the duty of the defendant, through its conductor and motorman, to see to it that said first car did not stop at Thompson's Crossing longer than was necessary to allow the passenger to alight, and as soon as the passenger did alight it was the duty of this conductor to give the motorman the proper signal to go ahead.

"(2) The car being delayed at the crossing for a period of about three minutes, by reason of running over the crossing, backing up, and the conductor stopping to make change and talking with passengers on the rear of said car, it was the duty of Conductor Munyon to light a fusee and throw the same upon the track, so as to warn plaintiff that his car was in that vicinity, and especially so on account of the foggy conditions which existed that night."

The allegations of the third count need not be stated, for the reason that the case was submitted to the jury upon the first and second counts of the declaration.

From the requests of counsel of both parties submitted to the court to charge the jury, and also from the charge of the court, it appears that the case was prosecuted, tried, and submitted with reference to the following provisions of Act No. 104, Pub. Acts 1909:

"In all actions hereafter brought against any such common carrier railroad company, under or by virtue of any of the provisions of this act, to recover damages for personal injury to an employee   *   *   *   the

fact that an employee may have been guilty of contributory negligence shall not bar a recovery: *Provided,* that the negligence of such employee was of a lesser degree than the negligence of such company, its officers, agents or employees."

A motion for a new trial was made by defendant, one of the grounds of which was as follows:

"Because the verdict rendered by the jury in said cause was not supported by a fair preponderance of the evidence, but, on the contrary, was against the weight of the evidence."

This motion was denied, and exceptions duly taken.

The errors assigned and relied upon by defendant which are discussed relate to the refusal of the court to grant a new trial on the ground that the verdict was against the weight of the evidence, and to the refusal of the court to strike out certain testimony of two physicians who were witnesses for plaintiff.

The contention urged most strongly on the part of defendant in its brief is that the judgment in this case should be set aside because it is clearly against the great weight of the evidence; in fact, it is claimed it is against the overwhelming weight of the evidence. This is the crucial question in the case.

Before proceeding with the consideration of this question, a few words relative to the statement of facts given in this opinion will be proper. This statement, in so far as it relates to the conduct and management of both sections of this train, from the time they left Grand Haven Junction until the collision occurred, is naturally, and to a considerable extent, based upon the testimony of the motorman and conductor of each section, for the reason that they were, in fact, the principal actors, and most closely connected with all of the incidents which were knit together in the entire transaction. There are some disputes and differences between these principal parties, but no more than ordinarily develop in this class of cases.

Other witnesses who were in each of these sections during the entire trip from Grand Haven Junction strongly dispute the testimony of some of the train men, including plaintiff, and others as strongly favor such testimony. This testimony related principally to the time each section left Grand Haven Junction; the speed of the sections on the way down to Thompson's Crossing; the delay of the first section at that crossing by reason of having overrun and backing up to discharge a passenger; the delay in failing promptly to pull out from that station on time; the neglect to throw out the fusee; also the speed of the second section in coming to Thompson's Crossing; and many other matters. All of this testimony, as far as the physical facts surrounding the accident are concerned, was material and relevant to the issue, and clearly for the consideration of the jury.

The record shows that during the entire course of the trial the end and aim of each side was to show that each section of this train was operated with greater negligence than the other. When we consider the nature of this case we will appreciate that each party was warranted in taking such course, for the reason that, the case having been brought under Act No. 104, Pub. Acts 1909, quoted *supra,* the contest naturally resolved itself into one of the comparative negligence of the crews operating these sections.

In cases where the question of the weight of the evidence is presented to this court, the obligation always rests upon it to read with great care and weigh with deliberation all of the evidence, and in arriving at a conclusion to do so in accordance with the familiar rule we have repeatedly stated, that this court will only reverse a case upon the question of the weight of evidence when the verdict is clearly against the great weight of such evidence. *Gardiner* v. *Courtright,* 165 Mich. 54, at pages 61, 62 (130 N. W. 322);

*Fike* v. *Railroad Co.*, 174 Mich. 167, at page 208 (140 N. W. 592).

In our determination upon the weight of all of the evidence, we do not agree with the contention of appellant upon this question, and our conclusion is that the verdict for plaintiff was not clearly against the great weight of the evidence in the case. It follows that the circuit judge was not in error under the evidence in this case in denying a new trial.

Two other questions are raised and discussed by appellant relative to certain testimony of two physicians. Each of these physicians examined the plaintiff at or about the time suit was commenced, for the purpose of testifying in the case. The testimony of both of these witnesses was evidently offered as bearing upon the question as to whether the injury which plaintiff received at the time in question was permanent. Dr. Hastie was first called, and on direct examination testified as to his examination made upon the body of plaintiff in manipulating the right leg, stating, among other things, that:

"Bringing the limb away from the body—abduction—it was very limited, and evidently very painful to the man. The rotary motion also was very limited, * * * which indicated that there was some injury in this case to the hip joint. There was apparently an indication of a fracture."

The following hypothetical question was asked him:

"*Q.* The history of the case shows that on the 10th of September, 1911, Mr. Darling was injured in the wreck on the interurban, * * * and that it will appear when he takes the stand he suffers pain, considerable pain, more or less, all the time on the right of the spine in the small of the back. Whether or not that could come from the hip or injury to the hip?

"*A.* Yes; and the muscles moving the hip with this limited motion pulling against that, would give him pain."

He further testified that, in his opinion, the injury would be permanent. No objection was made to this direct examination or to any question then asked. After proceeding with the cross-examination and showing that the examination of plaintiff was made preparatory to being a witness, counsel for defendant made the following motion:

"Now, if your honor please, I move to strike out the answer of the witness where he stated that the plaintiff was suffering pain, or said he was suffering pain."

Counsel for plaintiff denied that the witness had so testified, and considerable colloquy occurred between counsel, which does not require quoting. The motion was denied by the court, and an exception was taken. The doctor was testifying to the condition in which he found plaintiff's hip. He volunteered that a certain condition, explaining it, "would give him pain," and further stated that a certain movement was very limited and evidently very painful. We do not think that any prejudicial error was committed in denying the motion.

The objectionable testimony given by Dr. Corbus is as follows:

"Doctor, the evidence shows that on the 10th of September, 1911, Mr. Darling, the plaintiff in this case, was a motorman on an interurban car running between this city and Muskegon; that he was on the rear car and ran into a head car, the car that was ahead; a serious collision resulted which threw him from the cab a distance of some 20 feet on to the ground; that previous to that he was well, strong, suffered no pain in his hip, or in the small of his back to the right of his spine; that he could walk normally; that he had received no other injury to his person since that time. Now, I will ask you whether or not, in your opinion, the condition you found there in his hip could result from such an accident?

"*A.* Yes."

Counsel for defendant moved to strike out both the question and answer as conclusions, incompetent, and not susceptible to the application of expert testimony. This was overruled, and an exception taken.

It appears that the witness testified somewhat out of the regular order of proof, for his convenience, and testimony was later introduced in the case to cover, as we understand, all of the facts included in the hypothetical question. We think the testimony was competent, as showing the character of the cause which might have produced the injury. This has been so recognized by this court. *Smith* v. *Railway*, 155 Mich. 466 (119 N. W. 640), and cases cited.

The case was properly submitted to the jury by the learned trial judge in a charge with which defendant in its brief finds no fault, and resulted in a verdict in favor of plaintiff. The question was one of comparative negligence, and the finding of the jury was warranted by the evidence.

We find no prejudicial error in the case.

The judgment of the circuit court is affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.