*In re* CUTTER'S ESTATE.

SIMMER *v.* CUTTER'S ESTATE.

1. APPEAL AND ERROR—EXCEPTIONS—TRIAL—NON-JURY TRIAL.
   In proceedings for the allowance of a claim against a decedent's estate, findings of the trial court disallowing the claim reviewed under the rule that, unless such findings are against the overwhelming weight of the evidence, the judgment will not be disturbed, and *held*, to warrant the determination of the court that the transaction constituted part of an exchange of properties, and included the transfer of a liquor license, being for that reason illegal.

2. CONTRACTS — INTOXICATING LIQUORS — LICENSE — EXCHANGE — VIOLATION OF STATUTE—ILLEGALITY.
   An agreement for an exchange that involved the transfer and use of a liquor license by the one taking over the business was illegal and the court will leave the parties where it found them in an action on a promissory note of the transferee.

Error to Kent; Perkins, J. Submitted October 17, 1916. (Docket No. 56.) Decided December 21, 1916.

Albert Simmer presented a claim against the estate of Charles Cutter, deceased, for the amount of a promissory note. The claim was allowed in the probate court, and Linnie Cutter, executrix, appealed to the circuit court. Judgment for defendant. Claimant brings error. Affirmed.

*Hatch, McAllister & Raymond,* for appellant.

*Grant Sims,* for appellee.

KUHN, J. In July, 1913, the claimant was the owner of a hotel building, furniture, and fixtures therein, and the bar and stock of liquors used in connection therewith, a hotel barn, three horses, buggies, blankets, and harness, and a blacksmith shop, all situated in Berlin, Ottawa county, Mich. The real estate upon which these buildings were situated had been purchased under a land contract, and the livery stable and blacksmith shop were about 10 feet apart and across the street from the hotel and saloon. Charles Cutter, the deceased, was at that time the owner of a saloon, stock of liquors, and fixtures situated in the city of Grand Rapids, Mich.

Claimant says that in July of that year negotiations were entered into for a trade of their respective properties, by the terms of which he was to turn over his hotel and bar, furniture, and fixtures, and stock of liquor, and also his livery barn, harness, wagons, buggies, etc., to Cutter, and assign to him the contract which he held covering the real estate; and in payment therefor Cutter was to turn over to Simmer his saloon and stock of liquor, furniture, and fixtures, situated in Grand Rapids, Mich., and pay to Simmer an additional sum of $1,000 cash; that this trade was carried out, and Cutter moved into the hotel at Berlin and took possession of the property there, and that he

moved to Grand Rapids and took possession of the property which he received. It is further claimed that about two weeks after this trade was consummated negotiations were commenced for the sale of the blacksmith shop, and that an offer was made to Cutter to trade the same for a secondhand automobile and an additional $500; that this latter trade was a distinct and separate transaction from the first, and was concluded on August 26, 1913, when Simmer accepted the note of Cutter in payment of the $500. The note was not paid at its maturity, and, Cutter having died, it was presented as a claim against his estate. Its allowance before the commissioners on claims was contested, on the ground that the note was given for an illegal transaction, in that in the exchange of the saloons an arrangement had been entered into for the use by the claimant of a liquor license which had also been unlawfully used by the deceased. The claim was allowed by the commissioners, and an appeal was taken to the circuit court, where the case was tried before the court without a jury, and a judgment there rendered disallowing the claim. The findings of the court are as follows:

"I. I am satisfied that the exchange of properties in this case was a single transaction.

"II. That claimant, before exchanging saloons with the deceased, arranged for the use of the license which the deceased had been unlawfully using, is established from his own testimony:

"'Q. He [the deceased] had been operating that saloon?

"'A. Yes, sir.

"'Q. Under whose license was he operating?

"'A. Mr. Dunn's license.

"'Q. George Dunn's?

"'A. Yes, sir; George Dunn's.

"'Q. When you left your place of business in Berlin, did you leave your retail liquor card hanging on the wall in the Berlin saloon?

" '*A*. Yes, sir; I did.

" '*Q*. And before you closed the trade with Mr. Cutter did you ask Mr. Dunn if he would allow you to use his license here in this city?

" '*A*. Yes, sir.

" '*Q*. If you traded, and Mr. Dunn told you he would?

" '*A*. Yes, sir; I asked him if I could run under his until I sold it. I didn't want it any longer.

" '*Q*. Yes; and he told you you could, and you operated the saloon under the license of George Dunn from the time you came here until you sold it to Gallagher?

" '*A*. Well, sir, I was running it, told Mr. Dunn I would run it, for him until I sold it.

" '*Q*. Did Mr. Dunn own the liquors and the stuff in there?

" '*A*. Well, no; he didn't own the liquors.

" '*Q*. Well, then, how were you operating for Dunn? That was your stock of goods which you had traded to Cutter; you were operating that place yourself, weren't you?

" '*A*. Yes.

..." '*Q*. *Until you sold it?*

" '*A*. Yes, sir.

" '*Q*. And operating it under that Dunn license?

" '*A*. Yes.

" '*Q*. Yes, and you had a stock of liquors?

. " '*A*. Had a stock of liquor.

" '*Q*. You traded him your saloon and your fixtures.

" '*A*. Had a stock of liquor there.

" '*Q*. And you didn't pay any attention to having your license hanging on the wall there, didn't think it amounted to anything?

" '*A*. I didn't think anything about it.

" '*Q*. You knew it did amount to something to have Dunn's license on the wall here if you operated here?

" '*A*. Yes, sir.

" '*Q*. As a matter of fact, didn't you say that you would trade your license if he would trade Dunn's license to you here?

" '*A*. There wasn't anything said about the license there.

" '*Q*. And then you operated the saloon here until December under Dunn's license?

" '*A*. Yes, sir.'

"III. That the deceased before the exchange operated his saloon in Grand Rapids under the Dunn license, and that after the exchange he operated the saloon

in Berlin under the Simmer license, are undisputed facts in the case.

"IV. That it was mutually understood by the parties that each could use the license of the other, or the license that the other had been operating under, after the exchange, is fairly established by a preponderance of the evidence in this case.

"V. The item of $60 for a gasoline engine, subsequently sold to the deceased, is sufficiently established by claimant.

### "Conclusions of Law.

"1. The transaction relating to the exchange of saloons and other property in connection therewith is void, and no recovery can be had upon the note in controversy.

"2. Recovery can be had for the gasoline engine so sold and delivered, $60 and interest at 5 per cent."

It is stated by the appellant that the questions involved are as follows:

"(1) Was the note of August 26, 1913, given as part of the consideration for the sale and transfer of the blacksmith shop?

"(2) Is the finding of the court, that the note was given for an illegal consideration, against the clear weight of evidence?"

In the judicature act (Act No. 314, Pub. Acts 1915, chap. 18, § 15 [3 Comp. Laws 1915, § 12587]), the following provision with reference to cases tried before a court without a jury is found:

"SEC. 15. In such cases, either party may file exceptions to the findings of facts, that such findings are against the clear weight of evidence, and may assign error upon such exceptions, and if an appeal be taken, the same shall be reviewed by the Supreme Court."

For the purpose of availing himself of the foregoing statute exceptions were duly filed by the claimant to each of the findings of fact made by the court on the specific ground that such findings were against the

clear weight of the evidence. In the construction of this new provision in the judicature act we are of the opinion that we should be governed by the same rule which we have announced with reference to reviewing the decision of a trial judge in refusing to grant a motion for a new trial on the ground that it was against the great weight of the evidence. In the case of *Gardiner* v. *Courtright,* 165 Mich. 54 (130 N. W. 322), it was said:

"The rule is well settled that this court will only reverse a case upon the question of the weight of the evidence when the verdict is against the overwhelming weight of the evidence. The verdict must be clearly against the great weight of the evidence, to require this court to overrule the decision of the circuit judge refusing a new trial. This rule has been repeatedly stated by us"—citing many cases.

See, also, *People* v. *Sartori,* 168 Mich. 308 (134 N. W. 200) ; *Reed* v. *McCready,* 170 Mich. 532 (136 N. W. 488) ; *Eesley Light & Power Co.* v. *Commonwealth Power Co.,* 172 Mich. 78 (137 N. W. 663) ; *Fike* v. *Railroad Co.,* 174 Mich. 167 (140 N. W. 592) ; *Druck* v. *Antrim Lime Co.,* 177 Mich. 364 (143 N. W. 59) ; *McGary* v. *Buick Motor Co.,* 182 Mich. 345 (148 N. W. 722) ; *Darling* v. *Railway Co.,* 184 Mich. 607 (151 N. W. 701) ; *Walsh* v. *Railway Co.,* 185 Mich. 177 (151 N. W. 754) ; *Silverstone* v. *Assurance Corporation,* 187 Mich. 333 (153 N. W. 802) ; *Ponke* v. *Railway,* 189 Mich. 74 (155 N. W. 485).

In the review of this record we are not satisfied that the findings of the circuit judge were so clearly against the weight of the evidence as to warrant us in disturbing his conclusion. As we have often said, the trial judge had the advantage of hearing the witnesses testify, and has a better opportunity to judge of their credibility than the appellate court. The entire transaction occurred in August of that year, and in

the assignment of the land contract which covered all the land no reservation was made of the land upon which the blacksmith shop stood. Mr. Ordway, the real estate agent who brought the parties together and received a commission for his services, testified that at the time the parties were negotiating and before the deal was closed "they were talking also about the blacksmith shop." The court in making inquiry as to the assignment of the land contract asked certain questions with reference thereto. The questions and their answers were as follows:

"*The Court:* And that covered the blacksmith shop, didn't it, that assignment?

"*A.* It would have covered it, unless we did not make the other deal here. He took the blacksmith shop over later on, because he wanted to think over it, so we left it all in one.

"*The Court:* You mean you did not make the assignment until after he had concluded to take the blacksmith shop?

"*A.* Well, let us see, I can't just—I can't just remember how that was now.

"*The Court:* Well, you never made but the one assignment of the land contract, did you?

"*A.* Seems to me we did, but I can't recall that now."

We do not think that the testimony supporting claimant's contention is so clear and convincing as to warrant us in setting aside the judge's finding with reference thereto.

Neither are we satisfied that the finding of the court with reference to the illegality of the transaction is unwarranted. It is a fair inference from the testimony that it was mutually understood by the parties that each could use the license of the other, or the license that the other had been operating under, after the exchange. That part of the claimant's testimony incorporated in the findings clearly shows his

purpose to use a license illegally. That the law will not aid either party to an illegal agreement and leaves the parties where it finds them is well established. See *Koppitz-Melchers Brewing Co.* v. *Behm,* 130 Mich. 649 (90 N. W. 676) ; *Detroit Salt Co.* v. *National Salt Co.,* 134 Mich. 103 (96 N. W. 1) ; *Fisher* v. *Transportation Co.,* 136 Mich. 218 (98 N. W. 1012, 112 Am. St. Rep. 358) ; *Bryant* v. *Wilcox,* 137 Mich. 669 (100 N. W. 918) ; *Walhier* v. *Weber,* 142 Mich. 322 (105 N. W. 772) ; *Dierkes* v. *Wideman,* 143 Mich. 181 (106 N. W. 735) ; *Benson* v. *Bawden,* 149 Mich. 584 (113 N. W. 20, 13 L. R. A. [N. S.] 721).

Being of the opinion that, as upon this record, we should not disturb the findings of the trial judge, either as to the facts or the law, we affirm the judgment.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.